**Michael Wayne JACKSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–02–00551–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 26, 2003.

James M. Leitner, Houston, for appellant.

Amanda Joy Peters, Houston, for appellee.

Panel consists of Justices ANDERSON, SEYMORE, and GUZMAN.

## OPINION

JOHN S. ANDERSON, Justice.

Appellant, Michael Wayne Jackson, was charged by indictment with aggravated assault with a deadly weapon, enhanced by two prior felony convictions. *See* TEX. PEN. CODE ANN. §§ 22.01(a)(1), .02(a)(2) (Vernon 2003); *see also* TEX. PEN.CODE ANN. § 12.42(d) (Vernon 2003). A jury found appellant guilty as charged in the indictment, found the two enhancements true, and assessed appellant's punishment at twenty-five years confinement. The trial court sentenced appellant accordingly.

In point of error one, appellant challenges the trial court's denial of his motion to dismiss; in point two, the trial court's denial of his request for a self-defense instruction; in points three through five, the admission of hearsay statements; and in points six and seven, the legal and factual sufficiency of the evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Houston Police Department patrol officer David Curry was dispatched to an assault at an apartment complex on March 11, 2001 at 7:30 a.m. When he arrived, he saw emergency personnel carrying the complainant, Mary Roberson, down the apartment stairs. Curry saw Roberson had wounds to her face and was crying. She appeared frightened and excited, and was worried about her children.

Curry learned the assault had occurred about fifteen to twenty minutes before Curry's arrival at the scene.[1] Roberson told Curry her boyfriend had assaulted her. She also told Curry she had moved to a new apartment in an effort to get away from her boyfriend, but he came to the apartment and asked her to give him a ride to work in the U–Haul vehicle she had rented for the move. Roberson initially stalled by saying she could not find her identification or was waiting for someone. She eventually refused to take appellant. Roberson told Curry appellant then picked up a 30 to 35 pound end table and threw it at Roberson. They struggled over the table, and Roberson fell onto the sofa. Roberson tried to hide her face under the pillows, but, according to what Roberson told Curry, appellant repeatedly struck her with the end table.

After Curry finished talking to Roberson, he spoke with Roberson's daughter Shacota, who was standing by her mother near the ambulance. According to Curry, Shacota was upset and crying because her mother was being taken away in the ambulance and had been assaulted. Shacota also appeared excited. Shacota said she saw appellant strike her mother with the table. Appellant also struck Shacota with the table. Because they were in the process of moving, they did not have a telephone in the apartment, so Shacota told her brother to leave, find a telephone, and call the police. Shacota also told Curry they had moved to get away from appellant.

Within five minutes of Curry's arrival and fifteen minutes from the time of the assault, Curry also spoke with Shaneque, Roberson's niece. According to Curry, Shaneque appeared excited, fearful, and angry. Shaneque stated she saw appellant strike Roberson with the end table. Shaneque said she grabbed an iron and hit appellant in the head to prevent him from striking Roberson any more. Shaneque stated when she tried to intervene, appellant hit her with the "night stand," as well.

Roberson was transported to the hospital with fractures to her eye sockets and face and severe swelling to her eyes, nose, and face. Curry testified he saw the table inside the apartment and believed it could cause serious bodily injury or death if used as a weapon.

After obtaining the information from the witnesses at the scene, Curry attempted to locate appellant. Officer Darrell Frank accompanied Curry, and the two officers went to a nearby townhouse where one of appellant's relatives lived. A person at the townhouse led Curry inside. The person also called for appellant to come downstairs. While Curry was inside the front part of the house, Frank went to the back. Curry heard Frank telling appellant to "get down." Curry ran to the back of the house where he saw appellant on a patio cover outside a second story window. The officers ordered appellant to get down as

---

1. At the beginning of its case in chief, the State called Mary Roberson (the complainant), Shaneque Roberson, and Shacota Roberson as witnesses. None answered. The State then introduced all the facts regarding the assault through hearsay declarations made to the investigating officer by the three eye-witnesses to the assault.

appellant screamed profanities at the officers. Frank described appellant's demeanor as "very hostile."

Appellant eventually climbed back through the window. Frank stayed near the backyard while Curry went to the front of the house. Curry told Frank over the radio that appellant had run out the front door, and Curry was chasing appellant on foot. Frank initially joined the chase, but eventually returned to get his patrol car. Curry chased appellant through two apartment complexes and over fences before he apprehended him. After Curry captured appellant, Frank and Officer Richard Lowe assisted Curry in handcuffing appellant and placing him in the patrol car. Once appellant was in custody, the officers noticed appellant had a cut on his head, a cut Curry believed was consistent with what Shaneque had told Curry about hitting appellant with the iron.

Appellant testified at trial, admitting he had been convicted of two felonies and had been arrested or convicted for several criminal offenses. He stated he never hit Roberson with the table or any other object. Instead, Shacota, Shaneque, and Roberson's teenage son began attacking appellant after appellant got into a verbal argument with Roberson. Appellant testified he never hit Roberson, and Roberson never hit him. Although he did not see who was hitting whom, appellant knew someone hit him and someone hit Roberson. Appellant claimed he never grabbed a table because everything was still packed. He testified he fled to his aunt's house to wait until everything cooled down. He said, if he had known Roberson's son had called the police, he would have left his aunt's house because he was on parole and did not want to go back to jail.

Jennifer Varela, a social worker and expert in the psychological aspects of domestic violence, testified for the defense and also in rebuttal for the State. After observing appellant's testimony, Varela testified he exhibited the typical behavior pattern of a domestic batterer. Specifically, she stated the fact appellant minimized his responsibility, used the passive voice, characterized Roberson and the children as overreacting to the argument, and fled with the intention of coming back when Roberson calmed down were common or typical behavior patterns of people who commit family violence. Varela testified she was under the impression Roberson was not cooperating with the State in this prosecution. Finally, Varela stated it was not uncommon for victims of domestic abuse to refuse to cooperate because of financial reasons, emotional attachments to the batterer, or fear.

## DISCUSSION

### Point of Error One: Denial of Appellant's Motion to Dismiss

In point of error one, appellant contends the trial court committed reversible error in denying his motion to dismiss. In the trial court, appellant argued (1) there was insufficient evidence to continue prosecution of the case and (2) the complaining witness requested dismissal. In support of his motion, appellant submitted an affidavit from the complainant stating (1) she did not wish the State to continue prosecution, (2) she did not see who hit her, (3) she did not receive injuries from appellant, and (4) after she returned from the hospital, she was told appellant had not injured her. On appeal, the gravamen of appellant's argument is that, in light of the complainant's affidavit of non-prosecution, there was insufficient evidence to support a determination of probable cause to indict.

Generally, a trial court does not have the power to dismiss a case unless the prosecutor requests dismissal. *Ex parte Seidel*, 39 S.W.3d 221, 223 (Tex. Crim.App.2001) (citing *State v. Johnson*, 821 S.W.2d 609, 613 (Tex.Crim.App.1991)). In addition, "[t]his court cannot review the sufficiency of the evidence to support an indictment, or question whether the grand jury had probable cause to indict." *Brochu v. State*, 927 S.W.2d 745, 749 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd). Finally, we note that a criminal conviction, which requires proof beyond a reasonable doubt, may rest on hearsay despite the lack of the complainant's testimony or even the complainant's recantation. *See, e.g., Salley v. State*, 25 S.W.3d 878, 881 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (holding evidence legally sufficient although largely presented through responding officer when complainant testified she could not remember any of the events leading to husband's arrest); *Peters v. State*, 997 S.W.2d 377, 382–83 (Tex.App.-Beaumont 1999, no pet.) (holding evidence legally sufficient to establish sexual assault despite being based largely on unobjected to hearsay in face of complainant's recantation); *Tejeda v. State*, 905 S.W.2d 313, 318 (Tex.App.-San Antonio 1995, pet. ref'd) (holding hearsay evidence of responding officer and physical evidence of cuts and bruises legally sufficient despite complaint's having claimed spousal privilege not to testify against husband).

We overrule appellant's point of error one.

### Point of Error Two: Denial of Appellant's Request for an Instruction on Self–Defense

In his second point of error, appellant contends the trial court committed reversible error in denying his request for an instruction on self-defense. A defendant is entitled to an instruction on any properly requested defensive issue raised by the evidence, regardless of whether the evidence is weak or strong, unimpeached or contradicted, or credible or not credible. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim.App.1999); *Hamel v. State*, 916 S.W.2d 491, 493 (Tex.Crim.App.1996). Thus, we must decide whether the evidence, viewed in the light most favorable to appellant, is sufficient to raise the issue of self-defense. *See Lavern v. State*, 48 S.W.3d 356, 360 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd) (en banc). This evidence includes that adduced by the State as well as the defendant. *See Kemph v. State*, 12 S.W.3d 530, 532 (Tex. App.-San Antonio 1999, pet. ref'd) (citing *Thompson v. State*, 521 S.W.2d 621, 624 (Tex.Crim.App.1974)).

Texas Penal Code section 9.31(a) provides "a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." TEX. PEN.CODE ANN. § 9.31(a) (Vernon 2003). To be entitled to an instruction on self-defense, appellant was required first to admit the conduct charged in the indictment and then to offer evidence justifying the conduct. *See Anderson v. State*, 11 S.W.3d 369, 372 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd); *see also Young v. State*, 991 S.W.2d 835, 839 (Tex.Crim.App.1999). Admitting the conduct, however, does not necessarily mean admitting the commission of every statutory element of the offense. *East v. State*, 76 S.W.3d 736, 738 (Tex.App.-Waco 2002, no pet.); *see, e.g., Martinez v. State*, 775 S.W.2d 645, 647 (Tex.Crim.App.1989) (stating denial of intent to kill did not preclude self-defense when defendant admitted pulling out gun, firing shot into air, and having finger on trigger when fatal shot fired). Instead, a defendant can suffi-

ciently admit the conduct alleged and justify a defensive instruction. *Torres v. State,* 7 S.W.3d 712, 715 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd). In addition, a defendant's repudiation of the specific actions his defense is meant to justify will not necessarily preclude a self-defense instruction when a defendant admits to some participation in the offense. *See Kemph,* 12 S.W.3d at 532–33 (holding, in resisting-arrest case, defendant was entitled to self-defense instruction when he admitted to struggling against officers but denied attempting to bite or kick them, but officers testified defendant did attempt to bite and kick them).

■ In the present case, appellant admitted only to grabbing Roberson's arm (an act, which according to his testimony, preceded the act giving rise to the assault charge) and to going over to her, "steady going like trying to get to her." Thus, the present case is distinguishable from cases like *Torres,* in which this court held the defendant, on trial for assault, had admitted his conduct sufficiently to warrant a self-defense instruction when he admitted to grabbing his wife by her hair, possibly hitting her in the face when he grabbed the hair at her forehead, struggling with her, and pushing her away. *Torres,* 7 S.W.3d at 716. *Cf. Withers v. State,* 994 S.W.2d 742, 745–746 (Tex.App.-Corpus Christi 1999, pet. ref'd) (holding self-defense instruction warranted when teacher accused of injury to a child admitted a "physical contest" with a special needs student, but denied intent to injure the child); *Holloman v. State,* 948 S.W.2d 349, 352 (Tex.App.-Amarillo 1997, no pet.) (holding defendant sufficiently admitted conduct when he conceded he struck his wife, tus-

sled with her, fell on her, and possibly hit her with his legs after falling).

Roberson, the complainant in the present case, however told the investigating officer that, after she and appellant struggled over an end table, she fell onto the sofa and appellant then struck Roberson repeatedly with the table. Two other witnesses also reported appellant struck Roberson with the end table. Under the reasoning of *Kemph,* then, appellant's testimony combined with the reports of the other witnesses might constitute sufficient "admission" of the assaultive conduct.

Nevertheless, there is one controlling fact that distinguishes this case from *Kemph* and further distinguishes it from *Torres, Withers,* and *Holloman.* Appellant testified Roberson did not hit him. And there is no evidence she hit appellant or that she even threatened him. In short, viewing the evidence in the light most favorable to appellant, we are left with a picture in which appellant assaulted a person who never used or attempted to use unlawful force against him. *Cf.* TEX. PEN. CODE ANN. § 9.31(a) (Vernon 2003).

We overrule appellant's point of error two.

### Points of Error Three through Five: Admission of Hearsay Declarations

In point of error three, appellant challenges the admission of Roberson's statements to Curry; in point of error four, the admission of Shaneque's statements to Curry; and in point of error five, the admission of Shacota's statements to Curry. Over appellant's hearsay objections, the trial court admitted the statements under the excited utterance exception to the rule against hearsay.[2]

---

**2.** The State does not argue appellant failed to preserve error in relation to any of the statements. Error may not be predicated on a ruling admitting evidence unless "a timely

objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." TEX R. EVID. 103(a)(1). Appel-

The excited utterance exception to the hearsay rule provides that "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule. TEX.R. EVID. 803(2). For a statement to qualify as an excited utterance under rule 803(2), the following criteria must be met: (1) the statement must be the product of a startling event; (2) the declarant must have been dominated by the emotion, excitement, fear, or pain of the event; and (3) the statement must have related to the circumstances of the startling event. *McFarland v. State*, 845 S.W.2d 824, 846 (Tex.Crim.App.App.1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9, 14 (Tex.Crim.App. 1994). A court may also consider how much time elapsed between the startling event and the statement. *See Wood v. State*, 18 S.W.3d 642, 652 (Tex.Crim.App. 2000) (determining a fourteen-hour delay is excessive for an excited utterance exception); *Ross v. State*, 879 S.W.2d 248, 249 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd) (holding that statement within thirty to forty-five minutes of an attack was an excited utterance).

The determination of the admissibility of an out-of-court statement under an exception to the hearsay rule is within the trial court's discretion. *See Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim.App.1995). Absent a clear abuse of discretion, this court will not overturn the trial court's determination. *See Montgomery v. State*, 810 S.W.2d 372, 390–91 (Tex. Crim.App.1990).

lant lodged only the following objections to Shaneque's statement:

Q. **[By the Prosecutor]** When you talked to Shaneque, did she make any statements to you?

MR. MUHAMMAD [Defense Counsel]: Objection, calls for hearsay.

THE COURT: The question was did she, not what were they. The objection is overruled.

Q. **[By the Prosecutor]** Did she make any statements to you?

A. Yes, sir, she did.

Q. And what was—what was Shaneque's emotional state at that time?

MR. MUHAMMAD: Objection, hearsay, Judge.

THE COURT: Overruled.

MR. MUHAMMAD: Judge, the statements could be made in more than an oral presentation.

THE COURT: The question: What was Shaneque's emotional state at that time.

MR. MUHAMMAD: And Judge, it is asked purely for the prejudicial value. The jury will think her emotional reaction were speaking.

THE COURT: Well, I don't know what the jury is going to think, but your objection is overruled.

THE WITNESS: She was very upset, too, because she had been assaulted by—

MR. MUHAMMAD: Objection, assuming facts not in evidence.

THE COURT: Overruled.

THE WITNESS:—because she had been assaulted by the defendant.

Q. So if you could, tell us what Shaneque told you?

MR. MUHAMMAD: We object to hearsay. We first heard of this alleged assault and we're totally surprised by it.

THE COURT: Well, your objection is overruled.

MR. MUHAMMAD: In other words, Judge, anybody they want him to have assaulted—

THE COURT: Listen to me. I can only go by the question that's asked, and I can go by the objection that's made. The objection that was made to the question that was asked is overruled.

MR. MUHAMMAD: There's no such mention of any assault of anybody but—

THE COURT: Excuse me. Your objection is overruled.

Because we conclude the trial court did not abuse its discretion in admitting Shaneque's declaration, we need not address whether these objections adequately preserved the asserted error.

Curry testified he first saw Roberson as the emergency personnel were bringing her down from her apartment. Roberson was crying, very upset, and worried about her children. She had physical wounds to her face, and stated her boyfriend had assaulted her. Curry saw Roberson in this condition about fifteen or twenty minutes, maybe less, after the assault occurred.

Curry spoke with Shacota immediately after he finished speaking to Roberson. Shacota was "very upset and crying because her mother was being taken away in the ambulance and had been assaulted." Shacota saw appellant assault Roberson.

Curry spoke with Shaneque within five minutes of his arrival at the scene, about fifteen minutes from the time of the assault. Shaneque appeared excited, fearful, and angry. She had seen appellant hit Roberson with the table, and appellant had then hit Shaneque, too.

All three statements meet the criteria for admission as excited utterances. The trial court did not abuse its discretion in admitting Roberson's, Shacota's, and Shaneque's statements to Curry.

We overrule appellant's points of error three, four, and five.

### Points of Error Six and Seven: the Legal and Factual Sufficiency of the Evidence

In point of error six, appellant challenges the legal sufficiency of the evidence to support his conviction of aggravated assault with a deadly weapon; in point of error seven, the factual sufficiency of the evidence. He does not contend the evidence is insufficient on any particular element of the offense; instead, the gravamen of his argument in both points of error is that the evidence is insufficient because "the declarations made by the complainant and her family members ..."

were not credible" when the declarants did not appear at trial and their absence was unexplained.

When reviewing the legal sufficiency of the evidence, this court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Garrett v. State*, 851 S.W.2d 853, 857 (Tex.Crim. App.1993). This standard of review applies to cases involving both direct and circumstantial evidence. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995).

When conducting a factual sufficiency review, we view the evidence in a neutral light favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim.App.2000). When a defendant who has presented evidence challenges the factual sufficiency of the elements of an offense, the correct standard we must follow requires us to determine whether (1) the proof of guilt is so obviously weak as to undermine confidence in the jury's verdict, or (2) the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson*, 23 S.W.3d at 11; *see also Zuliani v. State*, 97 S.W.3d 589, 593–94 (Tex.Crim.App.2003). We must accord due deference to the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence. *Johnson*, 23 S.W.3d at 9. The verdict should be set aside only in order to prevent a clearly wrong and unjust result. *See Jones v. State*, 944 S.W.2d 642, 648 (Tex.Crim.App.1996).

As discussed under points of error three through five, the declarations of the complainant and her family members were admissible under the hearsay exception for

excited utterances. This exception is founded on the belief that statements made as a result of a startling event or condition are involuntary and do not allow the declarant an adequate opportunity to fabricate, thus ensuring enough trustworthiness to fall outside the rule excluding hearsay. *See Couchman v. State*, 3 S.W.3d 155, 159 (Tex.App.-Fort Worth 1999, pet. ref'd). Moreover, as we stated in analyzing point of error one, a criminal conviction may rest on hearsay despite the lack of the complainant's testimony or even the complainant's recantation. *See, e.g., Salley*, 25 S.W.3d at 881 (holding evidence legally sufficient although largely presented through responding officer when complainant testified she could not remember any of the events leading to husband's arrest); *Peters*, 997 S.W.2d at 382–83 (holding evidence legally sufficient to establish sexual assault despite being based largely on unobjected to hearsay in face of complainant's recantation); *Tejeda*, 905 S.W.2d at 318 (holding hearsay evidence of responding officer and physical evidence of cuts and bruises legally sufficient despite complaint's having claimed spousal privilege not to testify against husband).

In the present case, the State established the elements of the offense not only through Roberson's declaration to Curry, but through the declarations of two other eye-witnesses, as well. In addition, the State introduced Roberson's medical records with an EMS report containing the following notation: "Pt stated that her boyfriend hit her w/a table multiple times." Viewed in the light most favorable to the prosecution, the evidence was legally sufficient to support appellant's conviction.

Additionally, when we view the evidence in a neutral light favoring neither party, we cannot conclude either that the proof of guilt is so obviously weak as to undermine confidence in the jury's verdict, or that the proof of guilt is greatly outweighed by contrary proof. The declarations made immediately after the assault were consistent with each other and with the physical evidence of Roberson's and appellant's injuries. Appellant's flight immediately after the assault and his further attempts to evade the police constitute circumstantial evidence of his guilt. *See Valdez v. State*, 623 S.W.2d 317, 321 (Tex.Crim.App.1979) (holding flight alone is insufficient to support guilty verdict, but is circumstance raising inference of guilt). Contrasted with the State's evidence is appellant's testimony that he never hit Roberson. Applying both *Johnson/Zuliani* prongs, we conclude neither requires reversal.

Viewed in a neutral light, the evidence is factually sufficient to support appellant's conviction.

We overrule appellant's points of error six and seven.

We affirm the conviction.