In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00001-CR


______________________________




BENNIE LEE BENNETT, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 06-0352X




 



Before Morriss, C.J., Carter and Cornelius,* JJ.


Memorandum Opinion by Justice Cornelius





________________________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


MEMORANDUM OPINION



 Bennie Lee Bennett was convicted of four offenses: attempted capital murder, felon in
possession of a firearm, unlawfully taking a weapon from a police officer, and burglary of a building. 
A jury assessed Bennett's punishments at confinement for life, for twenty years, for ninety-nine years,
and for twenty years, respectively. Bennett does not challenge the sufficiency of the evidence, but
asserts trial court error in three respects: refusing to give a jury instruction on self-defense, refusing
to give a jury instruction on the defense of necessity, and sustaining the State's challenge for cause
against a veniremember. We overrule all these contentions and affirm the judgment.

 The facts, viewed most favorably to the State, are as follows. On the morning of April 18,
2006, a Marshall police officer, Lieutenant Ronald Rogé, discovered Bennett in a building owned
by Marshall Pottery. An older model Ford truck was parked near the loading dock of the building. 
Rogé found several new, metal barbeque cooker lids in the bed of the truck. The lids were later
found to match the barbeque cookers located inside the building. Also in the truck was a shirt with
Bennett's name on it, along with some postal envelopes with Bennett's name on them, and a pair of
bolt cutters. Rogé saw Bennett coming around a corner in the building. Rogé recognized Bennett
and began to question Bennett about whether he had permission to be in the building. Bennett broke
and ran. Rogé gave chase, but was unable to apprehend Bennett. Later that day, Rogé received
information that Bennett might be found at Cole's Garage. Rogé arranged for Officer Brandon
Rousseau to go to Cole's Garage to apprehend Bennett. Rogé was to follow Rousseau shortly
afterward to act as his "back up." When Rousseau arrived at the garage, he decided to proceed alone
even though Rogé had not arrived because he was afraid Bennett would get away before Rogé
arrived. Bennett was seated in the back seat of a car that had two other men seated in the front seats. 
Rousseau approached the vehicle with his gun drawn and held to his side without his finger on the
trigger. He asked Bennett to raise his hands. When Bennett failed to immediately respond to his
request, Rousseau leveled his gun in Bennett's direction and repeated the request. Bennett then made
some movement with his hands but did not hold them very high. Rousseau then told Bennett to get
out of the car. Bennett did not immediately respond, but on Rousseau's second demand, it appeared
to Rousseau that Bennett began "backing up." At that point, Rousseau opened the car door, reached
in and grabbed Bennett's shirt, and started to pull him from the car. Bennett then came out of the car,
lunging at Rousseau with both hands, going for Rousseau's gun. Rousseau ordered Bennett to stop,
but he ignored the order. Rousseau was able to swing Bennett to the ground, where they struggled. 
At one point, Bennett pulled the trigger of the gun and shot Rousseau through the finger. When
Rogé arrived, Rousseau had Bennett on the ground with his arm pinned down where he could not
use the gun. Bennett had the gun in his hand with his finger on the trigger with the trigger depressed. 
Bennett was subdued and arrested.

 In Bennett's first point on appeal, he contends the trial court erred in failing to give the jury
an instruction on self-defense. To be entitled to claim self-defense, a defendant must meet the
requirements of Section 9.31 of the Texas Penal Code. That statute provides that, to justify the use
of force to resist an arrest or search, even an illegal one, the officer, before the defendant offers any
resistance, must use or attempt to use greater force than necessary to make the arrest or search; and
the defendant must reasonably believe force is necessary to protect himself against the officer's use
of greater force than necessary. Tex. Penal Code Ann. § 9.31 (Vernon 2003). Additionally, to
claim self-defense at trial, the defendant must substantially admit that he committed the offense
charged against him. Young v. State, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999); Jackson v. State,
110 S.W.3d 626, 631 (Tex. App.--Houston [14th Dist.] 2003, pet. ref'd).

 Bennett was not entitled to an instruction on self-defense in this case. First, there is no
evidence that Rousseau, who attempted to arrest Bennett, used excessive force. The evidence,
viewed in the light most favorable to Bennett's defense, shows that, when Rousseau first approached
the car Bennett occupied, he had his gun down and to his side, and his finger was not on the trigger. 
When he reached the car and saw Bennett was in the back seat, he leveled his gun and pointed it in
Bennett's direction with his finger still not on the trigger. He then told Bennett to raise his hands. 
Bennett did not immediately do so, but then reluctantly partly raised his hands. Rousseau told
Bennett to get out of the car. Bennett did not comply, but began to move in a way that looked to
Rousseau as if he were trying to back up. Rousseau then reached into the car, took hold of Bennett's
arm, and began to pull him out of the car. At that point, Bennett lunged at Rousseau and began
scuffling with him, trying to pull the gun away. Thus, the actions of Rousseau, viewed in the light
most favorable to Bennett, did not constitute excessive force under the circumstances. This is
especially true when considered with the facts that Rousseau knew Bennett had tried to escape from
detention earlier that day, had been previously convicted of felony escape, and was on community
supervision. See Jackson v. State, 110 S.W.3d at 632; Evans v. State, 876 S.W.2d 459, 464 (Tex.
App.--Texarkana 1994, no pet.).

 Second, Bennett did not admit the offense. He emphatically and repeatedly denied ever
striking Rousseau or assaulting him in any way. He denied ever having the gun in his possession,
or pulling the trigger, instead insisting that he was only trying to "get the gun away from me," and
that the shooting of Rousseau in the finger was just an accident. He denied any intent to hurt
Rousseau or any other law enforcement officer. He denied ever trying to take the gun away from the
officer and use it to kill him. He said, "I was trying to keep the weapon away from me where it
wouldn't harm me." As Bennett did not admit the offense, he was not entitled to an instruction on
self-defense. See Jackson v. State, 110 S.W.3d at 631; Kimbrough v. State, 959 S.W.2d 634, 640
(Tex. App.--Houston [1st Dist.] 1995, pet. ref'd).

 Bennett also contends the trial court erred in refusing to give the jury an instruction on the
defense of necessity. The availability of the necessity defense is governed by Section 9.22 of the
Texas Penal Code. That statute provides that conduct is justified if the actor reasonably believes the
conduct is immediately necessary to avoid imminent harm; the desirability or urgency of avoiding
the harm clearly outweighs the harm sought to be prevented by the laws proscribing the conduct; and
a legislative purpose to exclude the justification does not otherwise plainly appear. Tex. Penal
Code Ann. § 9.22 (Vernon 2003).

 In order to avail one's self of the necessity defense, one must not only produce evidence that
he reasonably believed his conduct was immediately necessary to avoid imminent harm, but he also
must substantially admit that he committed the charged offense. Young v. State, 991 S.W.2d at 839;
Hubbard v. State, 133 S.W.3d 797, 801 (Tex. App.--Texarkana 2004, pet. ref'd). Bennett did
neither. Officer Rousseau's actions in seeking to detain Bennett were not such as caused Bennett to
reasonably believe his own actions were immediately necessary in order to avoid harm. And Bennett
did not admit, but repeatedly denied, that he committed the offenses charged. His testimony was that
he never had possession of the gun, he was not trying to take the weapon from Rousseau, he did not
pull the trigger or otherwise harm Rousseau, and he had no intention to harm Rousseau, but would
always submit to officers' arrests when they wanted him to. For all these reasons, the trial court did
not abuse its discretion in refusing to give Bennett an instruction on the defense of necessity.

 In his last issue, Bennett contends the trial court erred in granting the State's challenge for
cause against veniremember number 8, a Mr. Johnson. In voir-dire examination, Johnson initially
testified that his religious beliefs would lead him to require the State to prove its case by "100%"
instead of beyond a reasonable doubt as the law provides. Bennett contends Johnson was
rehabilitated by defense counsel when he asked Johnson, "The question is would you hold the State
to a higher burden than beyond a reasonable doubt?" Johnson answered, "Not the way he explained
it." However, in other testimony, when asked if he could hold the State to the burden of beyond a
reasonable doubt, Johnson answered, "I can't say for sure," and "I'm not sure."

 We cannot say the trial court abused its discretion in sustaining the State's challenge to
Johnson. Johnson's testimony was ambivalent at best, and the overall sense of it was that he could
not say for certain that he would follow the law as to the State's burden of proof. Moreover, even
if it was error to excuse Johnson, Bennett was not harmed. The improper excusing of a member of
the venire panel will constitute reversible error only if the error deprived the defendant of a lawfully
constituted jury. Jones v. State, 982 S.W.2d 386, 394 (Tex. Crim. App. 1998). Bennett does not
claim that he was not afforded a lawfully constituted jury. No reversible error is shown.

 For all the stated reasons, we affirm the judgment of the trial court.



 William J. Cornelius

 Justice



*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment




Date Submitted: May 14, 2007

Date Decided: July 11, 2007


Do Not Publish



the fact-finder to determine. 
          It is well-established that a conviction may be based on the testimony of a single
eyewitness. Lewis v. State, 126 S.W.3d 572, 575 (Tex. App.—Texarkana 2004, pet. ref'd). 
Here, two eyewitnesses testified that Morgan was the person who robbed Springfield. This
testimony was not too weak to support a finding of guilt beyond a reasonable doubt, and
there is no contrary evidence of identity that is so strong that the standard of proof beyond
a reasonable doubt could not have been met. We overrule Morgan's sole point of error.
          We affirm the judgment.



                                                                Donald R. Ross
                                                                Justice
 
Date Submitted:      January 6, 2006
Date Decided:         January 12, 2006 

Do Not Publish