Opinion issued March 26, 2009















     


In The
Court of Appeals
For The
First District of Texas




NO. 01–08–00320–CR




LARRY RICHARDS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause No. 1092918




MEMORANDUM OPINION

          Appellant, Larry Richards, was indicted for having murdered the complainant,
Donald Brown, by stabbing him with a knife. See Tex. Penal Code Ann. § 19.02
(Vernon 2003). The jury charge included instructions on the lesser-included offenses
of manslaughter and criminally negligent homicide. See Tex. Penal Code Ann.
§§ 19.04, 19.05 (Vernon 2003). The jury convicted appellant of manslaughter and
assessed punishment at 20 years’ confinement and a $10,000 fine. The jury made,
and the trial court entered, an affirmative finding that a deadly weapon was used. 
          In two points of error, appellant contends that the evidence is (1) legally
insufficient to sustain his conviction for manslaughter because no evidence shows
that he acted recklessly and (2) “legally insufficient to support the jury’s verdict that
appellant committed the offense of manslaughter in the face of his claim of self
defense.”
          We affirm.
Background
          At the time of the events, appellant was staying at the apartment of his friend,
Donald Baines. 
          On November 14, 2006, the complainant, Donald Brown, came to Baines’s
apartment and knocked very loudly on the door. Baines and Brown had been co-workers for 15 years. When Baines opened the door, he noticed that Brown appeared
“buzzed out” and was behaving oddly. Brown asked to use the bathroom, and Baines
let him inside.
          According to Baines, when Brown emerged from the bathroom, he was yelling
“Who is Larry? Who is Larry?” Brown then saw appellant, Larry Richards, sitting
on the couch. Brown began to yell and curse at appellant, and kept “pushing the
issue.” The substance of the issue is not in the record. Baines tried to calm Brown
down, fearing that the yelling, which was increasing in volume, would disturb the
neighbors. 
          According to Baines, Brown approached appellant, yelling, “What you going
to do? I’ll kick you, I’ll kick you, I’ll do this, I will do this.” Appellant began to rise
from the couch and asked Brown what he was going to do. Baines reported that
Brown and appellant began pushing, “tussling,” and “reaching” at each other. 
Initially, Baines was in between the men, trying to break up the confrontation. Baines
was also trying to get Brown to leave. During the confrontation, Brown “went into
his [Brown’s] pocket,” and appellant grabbed a brown pocketknife that was on a
nearby coffee table. Baines testified that the knife, which had a three- or four-inch
blade, belonged to appellant and that appellant normally carried a knife. Baines
testified that appellant picked up the knife and “reached out” once more, toward
Brown’s chest, and “push[ed].” Brown was also reaching toward appellant’s chest,
but Baines did not see a weapon in Brown’s hand. Baines saw appellant with a knife
in his hand, but “didn’t see the stabbing, only reaching.” According to Baines, Brown
just stopped and walked out the door. Baines later testified that he pushed Brown out
the door. 
          Emergency personnel, who arrived approximately 15 minutes later, found
Brown sitting at the top of the stairs leading up to Baines’s apartment, approximately
10 feet outside of the front door. Brown was not breathing and did not have a pulse. 
          Dr. K. Haden-Pinneri, Assistant Harris County Medical Examiner, testified that
Brown died from three stab wounds to the chest and abdomen that punctured a major
artery and vein. Dr. Haden-Pinneri testified that such wounds, left untreated, would
likely cause death within 15 to 20 minutes. The autopsy revealed that Brown had a
blood-alcohol concentration of 0.2. 
          Houston Police Department (“HPD”) Officer R. Young found a droplet of wet
blood just inside Baines’s front door (on the floor just inside the threshhold) and on
the stairway outside. K. Orphe-Himes, of the HPD Crime Lab, testified that the DNA
of the blood found inside the doorway and on the stairs was consistent with that of
Brown. In addition, blood was found on appellant’s sock. DNA testing showed that
it was consistent with appellant’s DNA profile. 
          Baines’s neighbor at the apartment complex, Renay Holiday, testified that she
knew appellant and Brown; that she had heard them quarrel once in the past over
some beer, during which she heard appellant threaten to kill Brown; and that
appellant normally carried two knives—at least one of which was a folding knife with
a four-inch blade.
          HPD Officer C. Huffstetdler talked with two other witnesses at the apartment 
complex, Michael Washington and Kirsten Gee, who reported that they had been
standing together and talking at the foot of the stairs when Brown first arrived that
day. They reported that Brown appeared intoxicated, but did not appear injured at
that time.
          Officer Huffstetdler conducted a video-taped interview of appellant, which was
admitted at trial. During the interview, appellant admitted that he kept a pocketknife
in his briefcase, but he repeatedly denied having stabbed Brown. Appellant also
denied that he had had any confrontation with Brown or that he had felt threatened
or felt a need to defend himself. Appellant denied that he knew Brown or had ever
had any previous confrontations with him. Appellant asserted that, on the evening
of the incident, he had been asleep on the couch at Baines’s apartment; that he awoke
to Brown coming out of the bathroom yelling and cussing; that he saw Baines
pushing Brown out of the apartment; that appellant got up from the couch to assist
Baines; and that once Brown was out, appellant closed and locked the door and lay
back down on the couch. Appellant stated that, approximately 20 minutes later, he
got up and walked to the store to get some beer and that, when he returned, some kids
told him that there was a man on the stairs, and he called “9-1-1.” Appellant stated
that he directed emergency personnel to Brown and went back inside Baines’s
apartment. Appellant later asserted that he had called 9-1-1, waited for emergency
personnel to arrive, and then went to the store. 
          HPD Lieutenant B. Evans testified that he recovered the pocket-knife from
inside appellant’s briefcase, which was found at Baines’s apartment.


 There was not
a weapon recovered from Brown. 
          Dr. J. Love, a forensic anthropologist with the Harris County Medical
Examiner’s Office, performed a cut-mark impression analysis to determine the
characteristics of the cutting-edge of the knife that was used. She testified that the
characteristics of the cut were consistent with the characteristics of the pocketknife. 
          At the close of evidence, the jury charge included instructions on murder,
manslaughter, criminally-negligent homicide, and self-defense.


 The jury found
appellant guilty of manslaughter and made an affirmative finding that a deadly
weapon was used.
           Legal Sufficiency of the Evidence
          In his first point of error, appellant contends that the evidence is legally
insufficient to sustain his conviction for manslaughter because no evidence shows
that he acted recklessly.
A.      Standard of Review
          A legal-sufficiency challenge requires us to view all the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could
have found all of the essential elements of the offense (or finding) beyond a
reasonable doubt. See Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App.
2005); Sanchez v. State, 243 S.W.3d 57, 71–72 (Tex. App.—Houston [1st Dist.]
2007, pet. ref’d). To determine whether the evidence is legally sufficient, we must
examine the totality of the circumstances. Vodochodsky, 158 S.W.3d at 509.
Although our analysis considers all of the evidence presented at trial, we may not
re-weigh the evidence and substitute our judgment for that of the fact-finder. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We must resolve any
inconsistencies in the evidence in favor of the verdict. Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000).
 
B.      The Law. 
          A person commits manslaughter if he “recklessly causes the death of an
individual.” Tex. Penal Code Ann. § 19.04(a) (Vernon 2003). A person acts
recklessly
with respect to . . . the result of his conduct when he is aware of but
consciously disregards a substantial and unjustifiable risk that the . . . result
will occur. The risk must be of such a nature and degree that its disregard
constitutes a gross deviation from the standard of care that an ordinary person
would exercise under all the circumstances as viewed from the actor's
standpoint.
 
Tex. Penal Code Ann. § 6.03(c) (Vernon 2003).
C.      Analysis
          Here, the State presented evidence that appellant recklessly caused Brown’s
death.
          Baines testified that, on the evening of the incident, Brown emerged from the
bathroom yelling and cursing at appellant; that Brown approached appellant, who was
seated on the couch; that appellant rose to meet Brown; that the men began reaching
for each other and pushing each other; that Brown put a hand in his pocket; that
Brown did not have a weapon; that appellant picked up a small brown pocketknife
that had a three- to four-inch blade from a nearby table; that Baines saw the knife in
appellant’s hand; that he saw appellant “reach” at Brown’s chest and “push”; and that
such action caused Brown to immediately stop and walk out the door.
          Dr. Haden-Pinneri testified that Brown died from three stab wounds to the
chest and abdomen that punctured a major artery and vein. 
          Baines’s neighbor, Holiday, testified that she had heard appellant and Brown
quarreling in that past. Holiday testified that she heard appellant threaten that “if 
[Brown] ever say [sic] anything to him again he was going to kill him.” Holiday
testified that appellant “had two knives at that time.” Holiday saw the two knives that
appellant was carrying on his person at the time he made the threat—at least one of
which was a folding knife with a four-inch blade.
          Viewing the evidence in the light most favorable to the verdict, the jury could
have rationally concluded beyond a reasonable doubt that appellant acted recklessly
in that he was aware of the risk that his knife could be used to cause death, and that
appellant consciously disregarded that substantial and unjustifiable risk when he,
during the heat of an argument, pulled his knife from a nearby table and reached at,
or pushed at, Brown with the knife. We hold that the evidence is legally sufficient. 
          Accordingly, we overrule appellant’s first point of error.
Self-defense
           In his second point of error, appellant contends that “[t]he evidence is legally
insufficient to support the jury’s verdict that appellant committed the offense of
manslaughter in the face of his claim of self-defense.” 
           A person is justified in using deadly force if (1) he has a reasonable belief that
it is immediately necessary to protect himself from another’s use of deadly force and
(2) a reasonable person in his place would not retreat. See Tex. Penal Code Ann.
§§ 9.31(a), 9.32(a) (Vernon 2003).


 A defendant has the burden of producing some
evidence to support a claim of self-defense. Zuliani v. State, 97 S.W.3d 589, 594
(Tex. Crim. App. 2003). Once a defendant presents evidence of self-defense, the
State has the burden of persuasion in disproving the evidence of self-defense. Id. 
The State is not required to produce evidence refuting the self-defense claim; the
State need only prove its case beyond a reasonable doubt. Id. When a jury finds the
defendant guilty, there is an implicit finding against the defensive theory. Id.
           In reviewing a challenge to the legal sufficiency of the evidence to support the
rejection of a self-defense claim, we view the evidence in the light most favorable to
the verdict to determine if any rational trier of fact would have found beyond a
reasonable doubt the essential elements of the offense and against the appellant’s
self-defense claim. Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).
           To be entitled to an instruction on self-defense, an accused first must raise the
issue of self-defense by admitting the conduct charged in the indictment and then
offer self-defense evidence as justification for that conduct. Jackson v. State, 110
S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d). 
           Here, the jury heard evidence, which it apparently chose to accept, that Brown
came to Baines’s apartment, engaged appellant in a verbal confrontation, that
appellant picked up a knife and “reached” for and “pushed” at Brown’s chest, and that
wounds were inflicted that resulted in Brown’s death. The jury may have believed
that the account of the “tussle” given by Baines indicated that appellant’s use of
deadly force was not based on a reasonable belief in a threat of deadly force
emanating from the conduct of Brown. Alternatively, the jury, having before it a
diagram of the room, may have believed that appellant could have reasonably
retreated. The jury apparently chose to disbelieve appellant’s assertions during his
taped interview that he never had any kind of altercation with Brown or stabbed him. 
           Viewing the evidence in the light most favorable to the verdict, a rational trier
of fact could have found that appellant either did not have a reasonable belief that
deadly force was immediately necessary to protect himself from another’s use of
deadly force or that a reasonable person in appellant’s place would have retreated. 
See Tex. Penal Code Ann. §§ 9.31(a), 9.32(a). Accordingly, we hold that the
evidence is legally sufficient to support the jury’s implied finding that appellant did
not act in self-defense. See Vasquez v. State, 2 S.W.3d 355, 358–59 (Tex. App.—San
Antonio 1999, pet. ref’d) (concluding that jury could reasonably find force used by
defendant not reasonably necessary to protect against victim’s use or attempted use
of force when victim suffered multiple stab wounds and weapon allegedly used by
victim was never recovered). 
           Accordingly, we overrule appellant’s second point of error.
Conclusion
We affirm the judgment of the trial court.
 
Laura Carter Higley
Justice
 
Panel consists of Justices Jennings, Keyes, and Higley.

Do not publish. See Tex. R. App. P. 47.2(b).