COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DEREK LEYVA GARCIA, | § | No. 08-10-00244-CR |
| | § | |
| Appellant, | § | Appeal from |
| | § | |
| v. | § | 394th District Court |
| | § | |
| THE STATE OF TEXAS, | § | of Brewster County, Texas |
| | § | |
| Appellee. | § | (TC # 3923) |

**O P I N I O N**

Derek Leyva Garcia appeals his conviction for aggravated sexual assault of a child. A jury found Appellant guilty as charged and sentenced him to twenty years in the Texas Department of Criminal Justice, Institutional Division. On appeal, Appellant challenges the admission of a videotaped interview with the complainant because the child was available to testify--and did in fact testify--at trial. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

Appellant was charged by indictment with aggravated sexual assault of a child. The indictment alleged that he penetrated the sexual organ of N.V., a child under the age of fourteen, with his finger. Appellant pled not guilty to the offense, and the case proceeded to a jury trial.

## Outcry Witness

Martha V., the complainant's mother, testified as the State's outcry witness. Martha testified that N.V. was eight years old at the time of trial. On or about June 17, 2009, she allowed her daughter to spend the night at Chelsea Garcia's house. Martha testified that she had known Chelsea for many years and N.V. knew Chelsea as well. Chelsea is Appellant's sister and at the time, she was dating Martha's brother.

After the sleepover Martha noticed changes in N.V. The child was acting "weird" and withdrawn, and was not playing like her normal hyper self. Martha asked N.V. several times over the next few days if anything was wrong. At some point, N.V. told Martha that Appellant had inappropriately touched her. N.V. told her mother that she was asleep but awoke because she felt someone touching her, and upon waking up she found Appellant beside her with his fingers in her panties. N.V. said she kept telling Appellant to stop, but that he put his finger inside N.V.'s vagina and it hurt.

Martha reported the incident to Sergeant Fierro at the Alpine Police Department. Sergeant Fierro spoke with N.V. alone and then sent the child and her mother to the hospital so N.V. could be examined. Martha told the nurse what N.V. had said and that the child had been pulling at the clothing around her crotch area, complaining that it burned.

## Officer Felipe Fierro

Sergeant Felipe Fierro testified that on June 21, 2009, he received a call in reference to the sexual assault of a child. He did not talk directly to N.V., but while he was speaking with Martha, N.V., "made a couple of statements telling me what was done to her." These statements were consistent with what Martha was telling him. He remembered N.V. saying, "it hurt her" and she

identified Appellant as the perpetrator.

Sergeant Fierro then followed Martha and N.V. to the hospital for an assault kit investigation by a sexual assault nurse. He also set up a forensic interview with Shanna Sullivan, the director of the Children's Advocacy Center. Sergeant Fierro viewed the interview from another room and found N.V.'s allegations to be consistent with those he received as part of his initial investigation.

### Nurse Practitioner and Sexual Assault Nurse Examiner

JoAnn Lister was the nurse practitioner and sexual assault nurse examiner (SANE) who performed the medical examination on N.V. Lister testified that in her years as a SANE nurse, she personally examined over seventy prepubescent girls like N.V. During the examination, N.V. told her that an older boy had unzipped her pants and felt both over and under her panties. N.V. also said the boy touched her breasts. When asked about N.V.'s demeanor during the exam, Lister described N.V. as aggressive, very angry, and upset about what had happened to her body. N.V. complained of painful urination which, in Lister's experience, is consistent with a child who has been sexually assaulted. After completing the physical exam and gathering information from both N.V. and her mother, Lister believed an incident had occurred.

### The Forensic Interviewer

Shanna Spence Sullivan is a forensic interviewer at the Children's Advocacy Center in Big Bend. On June 23, 2009, she conducted a videotaped interview with N.V. As part of the process, she talked with N.V. about right and wrong and determined that N.V. understood the difference. During the interview, only Sullivan and N.V. were present in the room. N.V. complained about being touched under her clothing on her vagina, her breast area, and her bottom. The child specified that Appellant actually put his finger inside her "honey bun," the child's term for vagina. N.V. was

3

"confident and matter of fact" and did not hesitate to answer Sullivan's questions.

## N.V.

N.V. testified that she was eight years old and about to start the second grade. Initially, the State entered into a discussion about the difference between the truth and a lie and established that N.V. knew the difference and promised to tell the truth.

N.V. was at Chelsea's house on the night of the offense. She was sleeping on the couch and awoke to Appellant touching her "in her middle," by which she meant her private part. She identified Appellant in open court as the person who touched her.

Significantly, N.V. testified that Appellant only touched her on the outside of her panties. After a few more questions, the State asked N.V. if she was sure that Appellant did not touch her underneath her clothes, and N.V. responded, "Yes." Over Appellant's objection, N.V. was also allowed to testify to previous incidents in which Appellant touched her, as evidence of intent. N.V. testified that on one occasion, Appellant touched her in her middle, and on a separate occasion, Appellant touched her "honey bun" and made her touch his penis. The State re-directed N.V.'s attention to the night at Chelsea's and the incident in question:

> Q. [By the State] And do you remember -- you know when we -- let's talk again about the time when he touched you at Chelsea's. Do you remember telling anybody that --
>
> A. (Nodding in the affirmative)
>
> Q. -- he had touched you in your private underneath your panties? Do you remember telling your mom or anybody else that?
>
> A. I just told Samantha, just her.[1]

---

[1] According to the testimony at trial, Chelsea left the children with a woman named Samantha. Martha testified that she knew Samantha and trusted her with the children, but also stated that Chelsea promised her she would be at the house in addition to Samantha and another adult named Gilly. At some point after N.V. awoke and found Appellant

N.V. could not remember ever talking about the incident with the forensic interviewer, nor did she remember ever talking to, or being examined by, a nurse. She believed that the only people she had told were her mother, Samantha, and Chelsea.

## **The Videotape**

After N.V's testimony was completed, the parties approached the bench and the State offered the videotape of the forensic interview into evidence. The State argued it was admissible:

> [O]n the basis that the child has no recollection of an obvious event that she underwent. . . . I believe we can do that when the child has no recollection of an event. Because to that extent, the witness is not available specifically when we have independent knowledge that it did, in fact, occur. And I think under [Texas Code of Criminal Procedure Article] 38.071 that is allowed.

The State went on to argue that under Texas law, there is no violation of the confrontation clause when a previous statement made by the child complainant is admitted into evidence when the child has testified at the trial and subjected to cross-examination, despite the fact the child could not remember making the prior statement. The State then concluded:

> And so that's basically what we have here, is a child who has no recollection of the statements that she made before and we are offering it under that necessity, basically because she -- it's a videotape recording of her statement, taken three or four days after the incident took place, in which she made allegations that she does not recall making at this time; in fact, does not recall even speaking to those particular witnesses, to those individuals.

Later, the State also argued that the videotape could be admitted for impeachment purposes as a prior inconsistent statement, or to refresh N.V.'s own memory. Defense counsel acknowledged that the videotape was properly made, but argued that the State could not admit the video simply because it was upset or surprised by N.V.'s changed testimony.

---

touching her, she called out for Samantha and Samantha moved her into another room. Samantha did not testify at trial.

After hearing arguments from both sides, the trial court decided that N.V. could be deemed unavailable to the extent she had absolutely no recollection of events. After expressing to the parties that he would admit the tape under Article 38.071, the trial court announced that he would watch the video overnight and that any ruling would be subject to his review and the State recalling Sullivan to authenticate the tape.

The next morning the State recalled both Sergeant Fierro and Sullivan for authentication purposes. The videotape was then played for the jury and transcribed into the record by the court reporter. On the video, N.V. told Sullivan that Appellant touched her underneath her clothes and placed his finger inside her "honey bun."

## WAS ADMISSION ERROR?

In his sole issue, Appellant argues the trial court abused its discretion in admitting video pursuant to Article 38.071 of the Texas Code of Criminal Procedure. Article 38.071, section 1 provides that the oral statement of a child who is younger than thirteen years old and a victim of certain offenses, including aggravated sexual assault, is admissible in evidence so long as certain prerequisites are met, including a finding that the child is unavailable. TEX.CODE CRIM.PROC.ANN. art. 38.071, § 1 (West 2005). Appellant complains that the trial court erred by finding that N.V. was unavailable for purposes of Article 38.071 after she had already testified about the incident at trial. He contends her live testimony showed that she was capable of relating facts of the assault, she was not emotionally or psychologically unable to testify, and could not be deemed unavailable. Appellant has not alleged any violation of his constitutional rights to confrontation, cross-examination, due process or due course of law, nor did he raise such issues before the trial court.

6

**Standard of Review**

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard and will not reverse absent a clear abuse of discretion. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex.Crim.App. 2005); *Laredo v. State*, 194 S.W.3d 637, 638 (Tex.App.--Houston [14th Dist.] 2006, pet. ref'd); *see also Mitchell v. State*, 238 S.W.3d 405, 410 (Tex.App.--Houston [1st Dist.] 2006, pet. ref'd)(applying an abuse of discretion standard of review to a trial court's determination of unavailability under Texas Code of Criminal Procedure Article 38.071). We afford almost total deference to the trial court's determination of historical facts that the record supports, especially when the findings are based on the evaluation of credibility and demeanor. *Mitchell*, 238 S.W.3d at 410. The trial court abuses its discretion only when the decision lies "outside the zone of reasonable disagreement." *Apolinar,* 155 S.W.3d at 186.

**Texas Code of Criminal Procedure Article 38.071**

Article 38.071 applies to a hearing or proceeding in which the court determines that a child under the age of thirteen would be unavailable to testify about one of the listed offenses, including aggravated sexual assault under Texas Penal Code 22.021. TEX.CODE CRIM.PROC.ANN. art. 38.071, § 1. Article 38.071, section 2(a) provides:

> The recording of an oral statement of the child made before the indictment is returned or the complaint has been filed is admissible into evidence if the court makes a determination that the factual issues of identity or actual occurrence were fully and fairly inquired into in a detached manner by a neutral individual experienced in child abuse cases that seeks to find the truth of the matter.

TEX.CODE CRIM.PROC.ANN. art. 38.071, § 2(a)(West 2005). Article 38.071, section 8 sets out relevant factors the court shall consider making a determination of unavailability including: (1) the relationship between the defendant and the child; (2) the character and duration of the offense; (3)

8

the age, maturity, and emotional stability of the child; and (4) the time elapsed since the alleged offense. TEX.CODE CRIM.PROC.ANN. art. 38.071, § 8(a). Additionally, the trial court should consider whether the child is more likely than not to be unavailable to testify because:

(1) of emotional or physical causes, including the confrontation with the defendant; or

(2) the child would suffer undue psychological or physical harm through his involvement at the hearing or proceeding.

TEX.CODE CRIM.PROC.ANN. art. 38.071, § 8(a).

## Was N.V. Unavailable?

Under Article 38.071, a court may determine that a witness who was available, has become unavailable. *See* TEX.CODE CRIM.PROC.ANN. art. 38.071, § 8(b). For example, in *Laredo v. State*, 194 S.W.3d 637, 639 (Tex.App.--Houston [14th Dist.] 2006, pet. ref'd), the child complainant refused to answer any questions about the offense by simply not responding to the questions, stating that she did not remember what happened, or stating that she did not want to talk about it. The court of appeals held that, even though the complainant testified partially, she did not provide relevant testimony for purposes of determining her availability, *i.e.,* testimony about the offense itself. *Id*. The court also noted that subsection 8(b) allows a judge to reconsider an earlier ruling regarding availability. *Id.* The court concluded that the trial court did not abuse its discretion in finding the child witness was unavailable. *Id.* Accordingly, even though she testified partially at trial about nonessential issues, the trial court was not prohibited from determining that she had subsequently become unavailable.

In *Mitchell v. State*, 238 S.W.3d 405 (Tex.App.--Houston [1st Dist.] 2006, pet ref'd), the court deemed the child complainant unavailable when it witnessed the child's inability to testify

9

about the events giving rise to the charges against the defendant. *Mitchell*, 238 S.W.3d at 409. The trial court noted that while on two separate occasions, the child testified at length about nonessential issues such as what she did on her lunch break, when confronted with direct questions about the defendant's conduct, she hid her face, cried, and was unable to answer. *Id*. On appeal, the court also noted the trial judge's comment that the child was "so emotionally involved she could not testify any further." *Id*. Finally, the court quoted the prosecutor, when he stated on the record, "The child is clearly unavailable, Your Honor. She was vomiting on the way out of the courtroom. She is unable [sic] for testimony." *Id*.

Here, the alleged incident occurred over a year before the trial began, and the videotaped interview took place three to four days after the incident. N.V. was seven at the time of the assault and eight at the time she testified. But unlike in *Mitchell* and *Laredo*, N.V. testified in detail about the assault. There was no evidence that she was afraid to testify in front of Appellant or was otherwise incapable of testifying as to the essential matters.

We thus conclude that the trial court abused its discretion in finding that N.V. was unavailable. *See Matz v. State*, 21 S.W.3d 911, 912 (Tex.App.--Fort Worth 2000, pet. ref'd)(finding that the trial court abused its discretion in admitting a videotape under Article 38.071 where the child complainant testified in detail during the State's case-in-chief about the alleged assault). We must now determine whether that error resulted in harm which would require reversal.

**Harm Analysis**

Evidentiary error is subject to a harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure and we are to disregard any error unless it affects Appellant's substantial rights. *See Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App. 1998); *Couchman v. State,* 3 S.W.3d

10

155, 160 (Tex.App.--Fort Worth 1999, pet. ref'd). A substantial right is affected when the error had

a substantial, injurious effect or influence on the jury's verdict. *See King v. State,* 953 S.W.2d 266,

271 (Tex.Crim.App. 1997), *citing Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239,

1253, 90 L.Ed. 1557 (1946); *Coggeshall v. State,* 961 S.W.2d 639, 643 (Tex.App.--Fort Worth 1998,

pet. ref'd)(en banc).

Improper admission does not constitute reversible error if the same facts are proved by other

properly admitted evidence. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex.Crim.App. 1998), *cert.*

*denied*, 528 U.S. 956, 120 S.Ct. 384, 145 L.Ed.2d 300 (1999)(holding that any error in the admission

of hearsay testimony was harmless in light of other properly admitted evidence proving the same

fact). In *Chambers v. State*, 805 S.W.2d 459 (Tex.Crim.App. 1991), the complainant recanted her

earlier videotaped outcry statement during her trial testimony. In the video, she had told the

investigating officer that Chambers had been molesting her. *Id.* at 459-60. The Court of Criminal

Appeals noted that the jury observed the complainant's demeanor while she testified, and it was

entitled to reconcile conflicts in her testimony and to disbelieve her recantation. *Id.* at 461. The

court also noted that:

> [T]his was not a situation in which the only evidence of guilt was the prior statement.
> There was additional circumstantial evidence from other witnesses which tended to
> corroborate the child's prior videotaped statement. Thus, the jury was not placed in
> the position of speculating whether, in the face of her recantation, there was sufficient
> evidence to show appellant committed the offense.

*Id*.; *see also Saldaña v. State,* 287 S.W.3d 43, 60 (Tex.App.--Corpus Christi 2008, pet. ref'd)("[I]t is

up to the fact finder to determine whether to believe the original statement or the recantation. A fact

finder is fully entitled to disbelieve a witness's recantation."); *Jackson v. State,* 110 S.W.3d 626, 631

(Tex.App.--Houston [14th Dist.] 2003, pet. ref'd)("[A] criminal conviction, which requires proof

11

beyond a reasonable doubt, may rest on hearsay despite the lack of the complainant's testimony or even the complainant's recantation.").

Here, the child's mother, Sergeant Fierro, JoAnn Lister, and Shanna Sullivan testified to N.V.'s statements of penetration, just as N.V. described it on the videotape. Without objection, Sullivan testified as follows:

Q. [By the State]: During this interview process with [N.V.], can you tell us what the allegations were, specifically, that were being made by [N.V.]?

A. Yes. It was touching under her clothing of her vagina, her breast area and her bottom.

.    .    .

Q. [By Defense Counsel]: So it's very possible -- now, you testified that her description of what had happened to her was under the clothing -- I guess when you say, 'under the clothing', you meant inside of her panties; is that correct?

A. Yes, sir.

Q. And the breast area?

A. Yes, sir.

Q. That he touched the breast area. Anything else?

A. The allegations were he touched her on her --

Q. Well, hold on; I know what the allegations were. What did she tell you?

A. She told me that he touched her on her vagina, on her breast and on her bottom and that his finger actually penetrated her vagina.

.    .    .

Q. [By Defense Counsel]: So did she actually say he put his finger in me, or how did she describe it?

A. I asked if any part of his body went inside of her body, and I believe she referred

12

to her vagina as her honeybun.  And she said, yes, his fingers -- or finger.  I think she actually corrected me and said finger.

Q.  So she is saying it's more than just a -- from a seven-year-old standpoint, she would be saying more than just a touching around the urethra but an actual insertion of the finger in the vagina?

A.  Yes, sir.

Considering the totality of the evidence admitted at trial, we find that the evidentiary error was harmless.  We overrule Appellant's sole point and affirm the judgment of the trial court.


February 1, 2012
                                                    ANN CRAWFORD McCLURE, Chief Justice


Before McClure, C.J., Rivera, and Antcliff, JJ.

 (Do Not Publish)


13