**Murphy James MITCHELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–04–00853–CR, 01–04–00854–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 28, 2006.

Discretionary Review Refused Aug. 22, 2007.

James Ducote, League City, TX, for Appellant.

Kurt Sistrunk, Criminal District Attorney, Galveston County, Galveston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

SHERRY RADACK, Chief Justice.

A jury convicted appellant, Murphy James Mitchell, of two charges of aggravated sexual assault of a child and assessed punishment at 80 years' confinement on each charge. In three points of error, appellant contends the trial court erred by (1) admitting the videotaped testimony of the child complainant, (2) finding that the child complainant was unavailable to testify, and (3) allowing any testimony by the child complainant after "The Rule" was violated. We affirm.

## BACKGROUND

The complainant, D.P., was four years old at the time of the alleged offense and six years old at the time of trial. Appellant is her uncle. D.P.'s mother, an outcry witness, testified that she left D.P. with appellant one day, and when she returned home, D.P. ran outside "babbling" that appellant had hurt her. When questioned further by her mother, D.P. told her that appellant had licked her, bit her on her back and privates, and put his finger in her vagina.

At trial, the State called D.P. to the stand to testify. D.P. testified at length about where she went to school, her favorite subjects, what games she liked to play, and how old she was. However, when the prosecutor tried to question D.P. about the circumstances of the alleged offense, the following exchange took place:

[Prosecutor]: Okay. D.P., do you remember on your dad's birthday two years ago on October 4th?

[D.P.]: Yes.

[Prosecutor]: And what happened with your Uncle Murphy that day? Can you tell us what happened that day?

[Defense Counsel]: I would like the record to reflect that she shook her head in a negative way when you asked that question.

[The Court]: We'll grant your request. The record will so reflect.

[Prosecutor]: Do you see your uncle here today? Look all around the courtroom and tell me if you see him?

[D.P.]: Huh-uh.

[Defense Counsel]: I would also like the record to reflect when asked that question she shook her head in a negative way.

[The Court]: All right.

[Prosecutor]: Thank you, D.P. Thank you for answering my questions, okay. I pass the witness.

[Defense Counsel]: I don't have any questions either.

The trial court released D.P., the prosecutor called two more witnesses, and the trial court then recessed for lunch.[1]

After lunch, the State attempted to recall D.P. as a witness. The prosecutor stated that D.P. "informed us that she was ready to tell the truth, that she was shy and that she was afraid people were going to laugh at her." Defense counsel objected to the State's attempt to reoffer D.P. as a witness, but the trial court permitted the State to recall D.P. Once D.P. was on the stand, defense counsel took her on voir dire to determine whether she had talked

---

1. In point of error three, appellant contends that "the Rule" was violated because, during the lunch break, D.P. went with her mother and another witness, Detective Cheryl Jackson, to lunch at McDonalds. We will further discuss the facts related to this contention during our resolution of point of error three.

to any other witnesses in the case during the lunch break. Again, D.P. was able to testify without problems about what she did during the lunch break. However, when the prosecutor attempted to resume her direct examination of D.P. the following exchange took place:

[Prosecutor]: D.P., can you look up at me? Can you look up at me?

[The Court]: D.P., do you want a drink of water?

[Prosecutor]: Okay, D.P., I'm going to ask you some questions. Can you answer me? D.P., can you answer my question?

[Defense Counsel]: Just for the record please note that there's been no response.

[The Court]: All right. I'll let you ask her again. I think you have to take your chances if she is going to testify.

[Prosecutor]: D.P., do you remember when you were here earlier this morning? D.P., do you remember when you were here this morning? Can you talk into this little black thing right here?

[Prosecutor]: Okay, Your Honor, we have no further questions.

[Defense Counsel]: No.

After D.P.'s inability to answer questions related to the offense, the trial court found her to be "unavailable" and excused her. The State called its next witness, Carmen Crabtree, a forensic interviewer at the Advocacy Center for Children in Galveston County. Crabtree testified that she conducted a videotaped interview of D.P. shortly after the alleged incident. The videotaped interview was admitted into evidence and played for the jury, over appellant's hearsay objection, during Crabtree's testimony.

## UNAVAILABILITY OF CHILD WITNESS

In points of error one and two, appellant contends the trial court erred by admitting D.P.'s videotaped testimony. Specifically, appellant contends that D.P. was not "unavailable" as a witness, and that her videotaped testimony was, therefore, inadmissible under TEX.CODE CRIM. PROC. ANN. art. 38.071 (Vernon Supp.2005). The admission of the videotaped testimony, appellant argues, violated his state and federal rights to due process and to confront witnesses.

### Did Appellant Waive his Due Process and Confrontation Clause Claims?

We begin by noting that, when the videotaped testimony of D.P. was offered by the State at trial, defense counsel said, "Judge we object again, and the basis of our objection is inadmissible hearsay." After a lengthy discussion of whether the child witness was unavailable, the State again offered the videotape into evidence. At this time, defense counsel stated, "Judge, we object again, and the basis of our objection is inadmissible hearsay." At no point during the entire discussion of the admissibility of the videotape did appellant claim that his due process rights or his right to confront witnesses had been violated.

Appellant's complaint on appeal is not hearsay, but that he was denied due process and his constitutional right to confront and cross-examine witnesses used against him. Appellant made no objection to the videotaped testimony based on an alleged violation of the confrontation clause or due process grounds.

To preserve error, there must be a timely, specific objection. *See* TEX. R.APP. P. 33.1. Even constitutional error may be waived by failure to object at trial. *Briggs v. State,* 789 S.W.2d 918, 924 (Tex. Crim.App.1990). A defendant waives his

constitutional right to confront witnesses if he does not object at trial. *Holland v. State,* 802 S.W.2d 696, 700 (Tex.Crim.App. 1991); *Thacker v. State,* 999 S.W.2d 56, 61 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd). Although appellant raised a hearsay objection, such objection did not preserve error on his confrontation clause claim. *See Saldivar v. State,* 980 S.W.2d 475, 496 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). A general hearsay objection does not preserve error on confrontation clause grounds. *Reyna v. State,* 168 S.W.3d 173, 179 (Tex.Crim.App.2005). Hearsay objections and objections to violations of the constitutional right to confront witnesses are neither synonymous nor necessarily coextensive. *Holland,* 802 S.W.2d at 700; *Thacker,* 999 S.W.2d at 61. *See also Briggs,* 789 S.W.2d at 923–24 (holding that because former Code of Criminal Procedure article 38.71 was not facially unconstitutional, appellant was required to make confrontation clause and due process trial objections to preserve those issues for appellate review.).

Appellant's hearsay objection did not preserve error on his confrontation clause and due process claims. Thus, to the extent that points of error one and two are based on those constitutional provisions, appellant has waived them. We will, however, consider whether the videotaped interview was properly admitted under article 38.071, over a hearsay objection.

### Can A Child Witness be Found Unavailable After Testifying Partially?

Article 38.071, section 2(a) of the Code of Criminal Procedure provides:

> The recording of an oral statement of the child made before the indictment is returned or the complaint has been filed is admissible into evidence if the court makes a determination that the factual issues of identity or actual occurrence were fully and fairly inquired into in a detached manner by a neutral individual experienced in child abuse cases that seeks to find the truth of the matter.

Tex.Code Crim. Proc. Ann. art. 38.071, § 2(a) (Vernon Supp.2005). However, a recorded statement is admissible only if the child witness is under 13 years of age and the trial court determines that the witness is unavailable to testify. Tex.Code Crim. Proc. Ann. art. 38.071, § 1 (Vernon Supp.2005).

■ Appellant contends that D.P. was not unavailable, as evidenced by the fact that she actually testified at the trial, albeit on nonessential issues. Appellant cites *Matz v. State* for the proposition that article 38.071 does not apply when the child witness has actually testified at trial, and that the admission of the videotape then constitutes hearsay. 14 S.W.3d 746, 746 (Tex.Crim.App.2000). An important factor makes *Matz* distinguishable. In *Matz,* the court of appeals noted on remand that the child witness "testified in detail at trial regarding the egregious acts committed by Appellant." 21 S.W.3d 911, 912 (Tex.App.-Fort Worth 2000, pet. ref'd). In this case, however, D.P. was unable to testify about any of the acts committed by appellant.

The State argues that, even though D.P. was available when the trial began and testified at length about nonessential matters, the trial court was not precluded from determining that she had become unavailable when she was unable to testify about the events giving rise to the charges against appellant. We agree.

Article 38.071, section 8(b) specifically provides that "[a] determination of unavailability under this article can be made after an earlier determination of availability." Tex.Code Crim. Proc. Ann. art. 38.071, § 8 (Vernon Supp.2005). In *Laredo v. State,* 194 S.W.3d 637, 639 (Tex.App.-Houston

[14th Dist.] 2006, no pet.), the child complainant "refused to answer any questions about the alleged offense, either simply not responding to the questions, stating that she did not remember what happened, or stating that she did not want to talk about it." The court of appeals held that, even though the complainant testified partially, she did not provide relevant testimony for purposes of determining her availability, *i.e.*, testimony about the offense itself. *Id.* The court also noted that subsection 8(b) allows a judge to reconsider an earlier ruling regarding availability. *Id.* The court concluded that the trial court did not abuse its discretion in concluding that the child witness was unavailable. *Id.* Accordingly, even though D.P. testified partially at trial about nonessential issues, the trial court was not prohibited from determining that she had subsequently become unavailable.

### Was the Child Witness Unavailable?

■ We turn then to whether the trial court erred in determining that D.P. was, in fact, unavailable. We review the trial court's ruling for an abuse of discretion, affording almost total deference to the trial court's determination of historical facts that the record supports, especially when the findings are based on the evaluation of credibility and demeanor. *Bousquet v. State*, 47 S.W.3d 131, 134–35 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd).

Article 38.071 provides the following factors for determining whether a child witness is unavailable:

Sec. 8. (a) In making a determination of unavailability under this article, the court shall consider relevant factors including the relationship of the defendant to the child, the character and duration of the alleged offense, the age, maturity, and emotional stability of the child, and the time elapsed since the alleged offense, and whether the child is more likely than not to be unavailable to testify because:

(1) of emotional or physical causes, including the confrontation with the defendant; or

(2) the child would suffer undue psychological or physical harm through his involvement at the hearing or proceeding.

Tex.Code Crim. Proc. Ann. art. 38.071, § 8(a)(1),(2) (Vernon Supp.2005). The evidence before the trial court was that appellant was D.P.'s uncle, that D.P. was four years old at the time of the incident and six years old at the time of trial, and that appellant was accused of licking D.P., biting her on her back and privates, and putting his finger in her vagina.

At trial, the trial court witnessed D.P.'s inability to testify about the events giving rise to the charges against appellant. On two separate occasions, D.P. testified at length about nonessential issues, but when confronted with direct questions about appellant's conduct, she, in the words of the trial judge, "hid her face and cried and was unable to testify in response to the questions" and was "so emotionally involved she could not testify any further." In fact, the prosecutor stated on the record, "The child is clearly unavailable, Your Honor. She was vomiting on the way out of the courtroom. She is unable [sic] for testimony." The trial court, in ruling on the unavailability of D.P. stated as follows:

[Court]: I held her, at first she was competent to testify, and then found that she was unavailable when she was unable to answer all the questions because she was emotionally distraught. That's what was my thinking that she was unavailable. When you reached the critical point identifying the Defendant she hid her head and other physical actions or emotions to not respond to your questions and therefore she was unavailable, and that's the . . . theory

the Court found her to be unavailable at that point. And now she is carrying that over to playing the video because you held her unavailable as to testify at the trial because she could not complete her response to the questions because of being emotionally overcome, correct?

The court later stated, "She's unavailable this time because she became emotional. She became unavailable to answer anything."

It is clear from the record before us that the trial court had sufficient information, based on the testimony it had already heard and from D.P.'s demeanor on the stand during her repeated, but fruitless attempts to testify, to conclude that, after considering the factors set forth in article 38.071, section 8(a)(1),(2), D.P. was unavailable to testify. *See Laredo*, 194 S.W.3d at 638 (holding that trial court did not abuse its discretion in finding child witness unavailable based on her refusal to answer questions about the offense and behavior in courtroom of leaving stand to hide). As such, the trial court's finding that D.P. was unavailable was not an abuse of discretion.

**Does article 38.071, section 8(a)(1),(2) Require a Separate Hearing and Findings?**

 Nevertheless, appellant argues that the trial court should have held a separate hearing to hear evidence, consider the factors set forth in section 8 of article 38.071, and make findings thereon. It is true that in many cases, trial courts hold separate evidentiary hearings to determine the availability of a child witness. *See Bousquet*, 47 S.W.3d at 134 (stating that trial judge conducted a pretrial hearing to de-

termine availability of complainant); *see also Penegar v. State*, 2005 WL 1208155 (Tex.App.-El Paso 2005, pet. dism'd w.o.j.) (not designated for publication) (stating that trial court conducted hearing before determining child's unavailability).

In a similar case, *Lively v. State*, the appellant argued that the trial court erred in admitting a child witness's videotaped statement because the trial court had neither conducted any form of *Maryland v. Craig* analysis,[2] nor made explicit findings on any of the *Maryland v. Craig* factors. 968 S.W.2d 363, 367 (Tex.Crim.App.1998). The Court of Criminal Appeals noted that nothing in *Maryland v. Craig* requires the trial court to make explicit findings, and that the three findings required by the *Maryland v. Craig* factors were implicit in the trial court's explicit ruling that the special procedure was "necessary to prevent substantial harm to [the child] caused by appellant's presence in the courtroom." *Id.* at 367.

Similarly, nothing in article 38.071 requires the trial court to hold a pretrial hearing to determine the witness's availability. Indeed, a pretrial hearing could not have been held in this case because the issue of D.P.'s availability was not an issue in this case until she was unable to testify at trial. And, although the trial court did not hold an evidentiary hearing, the court considered the factors in subsection 8 of article 38.071 before making his ruling. Furthermore, the ruling was not without an evidentiary basis. The trial court had heard D.P.'s partial testimony about her age, her age at the time of the offense, and

2. *Maryland v. Craig* holds that in order to show the necessity for using a special procedure for the testimony of child witnesses in child abuse cases, the trial court must first determine that (1) the use of the procedure is necessary to protect the welfare of the particular child witness who seeks to testify; (2) the

particular child witness would be traumatized by the presence of the defendant; and (3) the trauma would be more than de minimis, i.e., more than mere nervousness or excitement or some reluctance to testify. 497 U.S. 836, 855, 110 S.Ct. 3157, 3169, 111 L.Ed.2d 666 (1990).

her familial relationship with appellant. Additionally, the trial court witnessed firsthand the "undue psychological harm" D.P.'s involvement at the trial was having on her, as evidenced by her steadfast refusal to talk or answer any questions about the offense and her vomiting as she left the courtroom. As such, the trial court's finding that D.P. was not "unavailable" is not an abuse of discretion.

For the reasons given above, we overrule points of error one and two.

### VIOLATION OF "THE RULE"

In his third point of error, appellant argues that the trial court erred by allowing D.P. to testify after she went to lunch with two other witnesses, her mother and Officer Jackson, in an apparent violation of the rule of sequestration of witnesses ("the Rule"). *See* Tex.R. Evid. 614.

Texas Rule of Evidence 614 provides in relevant part, "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." Tex.R. Evid. 614. The purpose of placing a witness under the Rule is to "prevent the testimony of one witness from influencing the testimony of another." *Cook v. State,* 30 Tex.App. 607, 612, 18 S.W. 412, 412 (1892); *see also Archer v. State,* 703 S.W.2d 664, 666 (Tex.Crim.App.1986); *Hougham v. State,* 659 S.W.2d 410, 414 (Tex.Crim.App.1983) (Clinton, J., concurring). As a general rule, a witness's testimony cannot be excluded solely on the grounds that the witness violated the Rule, "although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court." *Webb v. State,* 766 S.W.2d 236, 241 (Tex.Crim.App.1989) (quoting *Holder v. United States,* 150 U.S. 91, 92, 14 S.Ct. 10, 10, 37 L.Ed. 1010 (1893)). We review the trial court's decision on whether to exclude a witness who has violated the rule for an abuse of discretion. *See Webb,* 766 S.W.2d at 245.

Although D.P. went to lunch with her mother and Officer Jackson, her testimony after lunch could not have been influenced by the testimony of either of those witnesses because, when the State called D.P. to the stand after lunch, she was, again, unable to answer any questions about the circumstances of the offense.

Realizing this, appellant seems to argue that the trial court should not have admitted D.P.'s written statement because "the Rule" had been violated. However, we fail to see how D.P.'s videotaped testimony, which was given two years earlier, could have been influenced by any violation of "the Rule" at trial.

We overrule point of error three.