COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 DEREK LEYVA GARCIA,
  
                      
                      Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                        
                   Appellee. 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-10-00244-CR
  
                          Appeal from
  
 394th District
 Court
  
 of Brewster County,
 Texas
  
 (TC # 3923)
 
 
 
 
  
  
 
 
  
  
 
 
  
  
 
 


                                                                  O
P I N I O N

 

Derek
Leyva Garcia appeals his conviction for aggravated sexual assault of a
child.  A jury found Appellant guilty as
charged and sentenced him to twenty years in the Texas Department of Criminal
Justice, Institutional Division.  On
appeal, Appellant challenges the admission of a videotaped interview with the
complainant because the child was available to testify--and did in fact
testify--at trial.  For the reasons that
follow, we affirm. 

FACTUAL SUMMARY

Appellant
was charged by indictment with aggravated sexual assault of a child.  The indictment alleged that he penetrated the
sexual organ of N.V., a child under the age of fourteen, with his finger.  Appellant pled not guilty to the offense, and
the case proceeded to a jury trial.  




Outcry Witness

Martha
V., the complainant=s mother,
testified as the State=s
outcry witness.  Martha testified that
N.V. was eight years old at the time of trial. 
On or about June 17, 2009, she allowed her daughter to spend the night
at Chelsea Garcia=s
house.  Martha testified that she had
known Chelsea for many years and N.V. knew Chelsea as well.  Chelsea is Appellant=s
sister and at the time, she was dating Martha=s
brother.  

After
the sleepover Martha noticed changes in N.V. 
The child was acting Aweird@ and withdrawn, and was not playing
like her normal hyper self.  Martha asked
N.V. several times over the next few days if anything was wrong.  At some point, N.V. told Martha that
Appellant had inappropriately touched her. 
N.V. told her mother that she was asleep but awoke because she felt
someone touching her, and upon waking up she found Appellant beside her with
his fingers in her panties.  N.V. said
she kept telling Appellant to stop, but that he put his finger inside N.V.=s vagina and it hurt.

Martha
reported the incident to Sergeant Fierro at the Alpine Police Department.  Sergeant Fierro spoke with N.V. alone and
then sent the child and her mother to the hospital so N.V. could be
examined.  Martha told the nurse what
N.V. had said and that the child had been pulling at the clothing around her
crotch area, complaining that it burned.

Officer Felipe Fierro

Sergeant
Felipe Fierro testified that on June 21, 2009, he received a call in reference
to the sexual assault of a child.  He did
not talk directly to N.V., but while he was speaking with Martha, N.V., Amade a couple of statements telling me
what was done to her.@  These statements were consistent with what
Martha was telling him.  He remembered
N.V. saying, Ait hurt
her@ and she identified Appellant as the
perpetrator.

Sergeant
Fierro then followed Martha and N.V. to the hospital for an assault kit
investigation by a sexual assault nurse. 
He also set up a forensic interview with Shanna Sullivan, the director
of the Children’s Advocacy Center. 
Sergeant Fierro viewed the interview from another room and found N.V.=s allegations to be consistent with
those he received as part of his initial investigation.

Nurse Practitioner and Sexual Assault Nurse
Examiner

JoAnn
Lister was the nurse practitioner and sexual assault nurse examiner (SANE) who
performed the medical examination on N.V. 
Lister testified that in her years as a SANE nurse, she  personally examined over seventy prepubescent
girls like N.V.  During the examination,
N.V. told her that an older boy had unzipped her pants and felt both over and
under her panties.  N.V. also said the
boy touched her breasts.  When asked
about N.V.=s
demeanor during the exam, Lister described N.V. as aggressive, very angry, and
upset about what had happened to her body. 
N.V. complained of painful urination which, in Lister=s experience, is consistent with a
child who has been sexually assaulted. 
After completing the physical exam and gathering information from both
N.V. and her mother, Lister believed an incident had occurred.

The Forensic Interviewer

Shanna
Spence Sullivan is a forensic interviewer at the Children=s Advocacy Center in Big Bend.  On June 23, 2009, she conducted a videotaped
interview with N.V.  As part of the
process, she talked with N.V. about right and wrong and determined that N.V.
understood the difference.  During the
interview, only Sullivan and N.V. were present in the room.  N.V. complained about being touched under her
clothing on her vagina, her breast area, and her bottom.  The child specified that Appellant actually
put his finger inside her Ahoney
bun,@ the
child=s term
for vagina.  N.V. was Aconfident and matter of fact@ and did not hesitate to answer
Sullivan=s
questions.

N.V.

N.V.
testified that she was eight years old and about to start the second
grade.  Initially, the State entered into
a discussion about the difference between the truth and a lie and established
that N.V. knew the difference and promised to tell the truth.

N.V.
was at Chelsea=s house on
the night of the offense.  She  was sleeping on the couch and awoke to
Appellant touching her Ain
her middle,@ by which
she meant her private part.  She
identified Appellant in open court as the person who touched her.  

Significantly,
N.V. testified that Appellant only touched her on the outside of her
panties.  After a few more questions, the
State asked N.V. if she was sure that Appellant did not touch her underneath
her clothes, and N.V. responded, AYes.@ 
Over Appellant=s
objection, N.V. was also allowed to testify to previous incidents in which
Appellant touched her, as evidence of intent. 
N.V. testified that on one occasion, Appellant touched her in her
middle, and on a separate occasion, Appellant touched her Ahoney bun@
and made her touch his penis.  The State
re-directed N.V.=s
attention to the night at Chelsea=s
and the incident in question: 

Q.  [By the State] And do you remember -- you
know when we -- let=s talk
again about the time when he touched you at Chelsea=s.  Do you remember telling anybody that -- 

 

A.  (Nodding in the affirmative)

 

Q.  -- he had touched you in your private
underneath your panties?  Do you remember
telling your mom or anybody else that?

 

A.  I just told Samantha, just her.[1]


N.V. could not
remember ever talking about the incident with the forensic interviewer, nor did
she remember ever talking to, or being examined by, a nurse.  She believed that the only people she had
told were her mother, Samantha, and Chelsea.

The Videotape

After
N.V=s testimony was completed, the parties
approached the bench and the State offered the videotape of the forensic
interview into evidence.  The State
argued it was admissible: 

[O]n the basis that
the child has no recollection of an obvious event that she underwent.  . . .  I
believe we can do that when the child has no recollection of an event.  Because to that extent, the witness is not
available specifically when we have independent knowledge that it did, in fact,
occur.  And I think under [Texas Code of
Criminal Procedure Article] 38.071 that is allowed. 

 

The State went
on to argue that under Texas law, there is no violation of the confrontation
clause when a previous statement made by the child complainant is admitted into
evidence when the child has testified at the trial and subjected to
cross-examination, despite the fact the child could not remember making the
prior statement.  The State then
concluded: 

And so that=s basically what we have here, is a
child who has no recollection of the statements that she made before and we are
offering it under that necessity, basically because she -- it=s a videotape recording of her
statement, taken three or four days after the incident took place, in which she
made allegations that she does not recall making at this time; in fact, does
not recall even speaking to those particular witnesses, to those individuals. 

 

Later, the State
also argued that the videotape could be admitted for impeachment purposes as a
prior inconsistent statement, or to refresh N.V.=s
own memory.  Defense counsel acknowledged
that the videotape was properly made, but argued that the State could not admit
the video simply because it was upset or surprised by N.V.=s changed testimony.  

After
hearing arguments from both sides, the trial court decided that N.V. could be
deemed unavailable to the extent she had absolutely no recollection of
events.  After expressing to the parties
that he would admit the tape under Article 38.071, the trial court announced
that he would watch the video overnight and that any ruling would be subject to
his review and the State recalling Sullivan to authenticate the tape.

The
next morning the State recalled both Sergeant Fierro and Sullivan for
authentication purposes.  The videotape
was then played for the jury and transcribed into the record by the court
reporter.  On the video, N.V. told
Sullivan that Appellant touched her underneath her clothes and placed his
finger inside her Ahoney
bun.@

WAS ADMISSION ERROR?

In
his sole issue, Appellant argues the trial court abused its discretion in
admitting video pursuant to Article 38.071 of the Texas Code of Criminal
Procedure.  Article 38.071, section 1
provides that the oral statement of a child who is younger than thirteen years
old and a victim of certain offenses, including aggravated sexual assault, is
admissible in evidence so long as certain prerequisites are met, including a
finding that the child is unavailable.  Tex.Code Crim.Proc.Ann. art. 38.071, ' 1 (West 2005).  Appellant complains that the trial court
erred by finding that N.V. was unavailable for purposes of Article 38.071 after
she had already testified about the incident at trial.  He contends her live testimony showed that
she was capable of relating facts of the assault, she was not emotionally or
psychologically unable to testify, and could not be deemed unavailable.  Appellant has not alleged any violation of
his constitutional rights to confrontation, cross-examination, due process or
due course of law, nor did he raise such issues before the trial court.  




Standard of Review

We
review a trial court=s
decision to admit or exclude evidence under an abuse of discretion standard and
will not reverse absent a clear abuse of discretion.  Apolinar v. State, 155 S.W.3d 184, 186
(Tex.Crim.App. 2005); Laredo v. State, 194 S.W.3d 637, 638
(Tex.App.--Houston [14th Dist.] 2006, pet. ref=d);
see also Mitchell v. State, 238 S.W.3d 405, 410 (Tex.App.--Houston [1st
Dist.] 2006, pet. ref=d)(applying
an abuse of discretion standard of review to a trial court=s determination of unavailability under
Texas Code of Criminal Procedure Article 38.071).  We afford almost total deference to the trial
court=s
determination of historical facts that the record supports, especially when the
findings are based on the evaluation of credibility and demeanor.  Mitchell, 238 S.W.3d at 410.  The trial court abuses its discretion only
when the decision lies Aoutside
the zone of reasonable disagreement.@  Apolinar, 155 S.W.3d at 186. 

Texas
Code of Criminal Procedure Article 38.071

Article
38.071 applies to a hearing or proceeding in which the court determines that a
child under the age of thirteen would be unavailable to testify about one of
the listed offenses, including aggravated sexual assault under Texas Penal Code
22.021.  Tex.Code Crim.Proc.Ann. art. 38.071, '
1.  Article 38.071, section 2(a)
provides: 

The recording of an
oral statement of the child made before the indictment is returned or the
complaint has been filed is admissible into evidence if the court makes a
determination that the factual issues of identity or actual occurrence were
fully and fairly inquired into in a detached manner by a neutral individual
experienced in child abuse cases that seeks to find the truth of the matter.

 

Tex.Code Crim.Proc.Ann. art. 38.071, ' 2(a)(West 2005).  Article 38.071, section 8 sets out relevant
factors the court shall consider making a determination of unavailability
including:  (1) the relationship between
the defendant and the child; (2) the character and duration of the offense; (3)
the age, maturity, and emotional stability of the child; and (4) the time
elapsed since the alleged offense.  Tex.Code Crim.Proc.Ann. art. 38.071, ' 8(a). 
Additionally, the trial court should consider whether the child is more
likely than not to be unavailable to testify because: 

(1)  of emotional or physical causes, including
the confrontation with the defendant; or

 

(2)  the child would suffer undue psychological or
physical harm through his involvement at the hearing or proceeding.

 

Tex.Code
Crim.Proc.Ann. art. 38.071, '
8(a). 

 

Was N.V.
Unavailable?

 

Under
Article 38.071, a court may determine that a witness who was available, has
become unavailable.  See Tex.Code Crim.Proc.Ann. art. 38.071, ' 8(b). 
For example, in Laredo v. State, 194 S.W.3d 637, 639
(Tex.App.--Houston [14th Dist.] 2006, pet. ref=d),
the child complainant refused to answer any questions about the offense by
simply not responding to the questions, stating that she did not remember what
happened, or stating that she did not want to talk about it.  The court of appeals held that, even though
the complainant testified partially, she did not provide relevant testimony for
purposes of determining her availability, i.e., testimony about the
offense itself.  Id.  The court also noted that subsection 8(b)
allows a judge to reconsider an earlier ruling regarding availability.  Id. 
The court concluded that the trial court did not abuse its discretion in
finding the child witness was unavailable. 
Id.  Accordingly, even
though she testified partially at trial about nonessential issues, the trial
court was not prohibited from determining that she had subsequently become
unavailable.  

In
Mitchell v. State, 238 S.W.3d 405 (Tex.App.--Houston [1st Dist.] 2006,
pet ref=d), the
court deemed the child complainant unavailable when it witnessed the child=s inability to testify about the events
giving rise to the charges against the defendant.  Mitchell, 238 S.W.3d at 409.  The trial court noted that while on two
separate occasions, the child testified at length about nonessential issues
such as what she did on her lunch break, when confronted with direct questions
about the defendant=s
conduct, she hid her face, cried, and was unable to answer.  Id. 
On appeal, the court also noted the trial judge=s
comment that the child was Aso
emotionally involved she could not testify any further.@
 Id.  Finally, the court quoted the prosecutor,
when he stated on the record, AThe
child is clearly unavailable, Your Honor. 
She was vomiting on the way out of the courtroom. She is unable [sic]
for testimony.@  Id. 

Here,
the alleged incident occurred over a year before the trial began, and the
videotaped interview took place three to four days after the incident.  N.V. was seven at the time of the assault and
eight at the time she testified.  But
unlike in Mitchell and Laredo, N.V. testified in detail about the
assault.  There was no evidence that she
was afraid to testify in front of Appellant or was otherwise incapable of
testifying as to the essential matters.

We
thus conclude that the trial court abused its discretion in finding that N.V.
was unavailable.  See Matz v. State,
21 S.W.3d 911, 912 (Tex.App.--Fort Worth 2000, pet. ref’d)(finding that the trial
court abused its discretion in admitting a videotape under Article 38.071 where
the child complainant testified in detail during the State=s case-in-chief about the alleged
assault).  We must now determine whether
that error resulted in harm which would require reversal.  

Harm
Analysis

Evidentiary
error is subject to a harm analysis under Rule 44.2(b) of the Texas Rules of
Appellate Procedure and  we are to
disregard any error unless it affects Appellant=s
substantial rights. See Johnson v. State, 967 S.W.2d 410, 417
(Tex.Crim.App. 1998); Couchman v. State, 3 S.W.3d 155, 160
(Tex.App.--Fort Worth 1999, pet. ref=d).  A substantial right is affected when the
error had a substantial, injurious effect or influence on the jury=s verdict.  See King v. State, 953 S.W.2d 266, 271
(Tex.Crim.App. 1997), citing Kotteakos v. United States, 328 U.S.
750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946); Coggeshall v. State,
961 S.W.2d 639, 643 (Tex.App.--Fort Worth 1998, pet. ref=d)(en
banc).

Improper
admission does not constitute reversible error if the same facts are proved by
other properly admitted evidence.  See
Brooks v. State, 990 S.W.2d 278, 287 (Tex.Crim.App. 1998), cert. denied,
528 U.S. 956, 120 S.Ct. 384, 145 L.Ed.2d 300 (1999)(holding that any error in
the admission of hearsay testimony was harmless in light of other properly
admitted evidence proving the same fact). 
In Chambers v. State, 805 S.W.2d 459 (Tex.Crim.App. 1991), the
complainant recanted her earlier videotaped outcry statement during her trial
testimony.  In the video, she had told
the investigating officer that Chambers had been molesting her.  Id. at 459-60.  The Court of Criminal Appeals noted that the
jury observed the complainant=s
demeanor while she testified, and it was entitled to reconcile conflicts in her
testimony and to disbelieve her recantation. 
Id. at 461.  The court also
noted that: 

[T]his was not a
situation in which the only evidence of guilt was the prior statement. There
was additional circumstantial evidence from other witnesses which tended to
corroborate the child=s
prior videotaped statement. Thus, the jury was not placed in the position of
speculating whether, in the face of her recantation, there was sufficient
evidence to show appellant committed the offense.

 

Id.; see
also Saldaña v. State, 287 S.W.3d 43, 60 (Tex.App.--Corpus Christi 2008,
pet. ref=d)(A[I]t is up to the fact finder to
determine whether to believe the original statement or the recantation.  A fact finder is fully entitled to disbelieve
a witness=s
recantation.@); Jackson
v. State, 110 S.W.3d 626, 631 (Tex.App.--Houston [14th Dist.] 2003, pet.
ref=d)(A[A]
criminal conviction, which requires proof beyond a reasonable doubt, may rest
on hearsay despite the lack of the complainant=s
testimony or even the complainant=s
recantation.@).  

Here,
the child=s mother,
Sergeant Fierro, JoAnn Lister, and Shanna Sullivan testified to N.V.=s statements of penetration, just as
N.V. described it on the videotape. 
Without objection, Sullivan testified as follows: 

Q.  [By the State]:  During this interview process with [N.V.],
can you tell us what the allegations were, specifically, that were being made
by [N.V.]? 

 

A.  Yes.  It was touching under her clothing of her
vagina, her breast area and her bottom. 

 

.          .          .

 

Q.  [By Defense Counsel]:  So it=s
very possible -- now, you testified that her description of what had happened
to her was under the clothing -- I guess when you say, ‘under the clothing’,
you meant inside of her panties; is that correct? 

 

A.  Yes, sir.

 

Q.  And the breast area? 

 

A.  Yes, sir. 

 

Q.  That he touched the breast area.  Anything else? 

 

A.  The allegations were he touched her on her --

 

Q.  Well, hold on; I know what the allegations
were.  What did she tell you? 

 

A.  She told me that he touched her on her
vagina, on her breast and on her bottom and that his finger actually penetrated
her vagina. 

 

.          .          .

 

Q.  [By Defense Counsel]:  So did she actually say he put his finger in
me, or how did she describe it? 

 

A.  I asked if any part of his body went inside
of her body, and I believe she referred to her vagina as her honeybun.  And she said, yes, his fingers -- or finger.  I think she actually corrected me and said
finger. 

 

Q.  So she is saying it=s
more than just a -- from a seven-year-old standpoint, she would be saying more
than just a touching around the urethra but an actual insertion of the finger
in the vagina? 

 

A.  Yes, sir. 

 

Considering
the totality of the evidence admitted at trial, we find that the evidentiary
error was harmless.  We overrule
Appellant=s sole
point and affirm the judgment of the trial court. 

 

 

February 1, 2012                                                                                                                              

                                                                        ANN CRAWFORD McCLURE,
Chief Justice

 

 

Before McClure, C.J., Rivera, and
Antcliff, JJ.

 

 (Do Not Publish)

 











[1]  According to
the testimony at trial, Chelsea left the children with a woman named
Samantha.  Martha testified that she knew
Samantha and trusted her with the children, but also stated that Chelsea
promised her she would be at the house in addition to Samantha and another
adult named Gilly.  At some point after
N.V. awoke and found Appellant touching her, she called out for Samantha and
Samantha moved her into another room. 
Samantha did not testify at trial.