**Opinion issued December 14, 2017**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

### NO. 01-17-00007-CR

———————————

### JOSE OYERVIDEZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the County Criminal Court at Law No. 2
### Harris County, Texas
### Trial Court Case No. 2082989

---

### MEMORANDUM OPINION

Jose Oyervidez was convicted of assault of a person with whom he had a

dating relationship or a member of his household, his live-in girlfriend, the

complainant, Maria Botello.[1] In three issues, Oyervidez contends that (1) there is

---

[1]    *See* TEX. PENAL CODE § 22.01(a)(1); TEX. FAM. CODE § 71.0021.

legally insufficient evidence that he and Botello were in a dating relationship or members of the same household, (2) the admission of Botello's out-of-court statements through the testimony of the responding officers violated the Confrontation Clause and rule against hearsay, and (3) the prosecutor made improper and incurable comments to the jury regarding Botello's failure to testify at trial. We affirm.

## Background

One afternoon, a woman called 911. In the recorded telephone call, she identified herself as Maria Guajardo and said she needed the police sent to her apartment. Her voice was shaky, and she sounded like she was crying. She told the operator that she had been in an altercation with her "boyfriend," whom she identified as Jose Oyervidez. She said that she had been "with him four years already" and that they had been living together for "almost a year."

She said that Oyervidez had hit her, tied her up with a rope, and then left the apartment. She provided the operator with her address and a description of Oyervidez. Houston Police Department Officers J. Rivera and M. Hernandez were dispatched to the scene.

While the officers were in route, the woman remained on the phone with the operator. As she provided the operator with further details about the altercation, she suddenly became frantic. She told the operator that Oyervidez had returned and

was trying to enter the locked apartment through the window. She then said that it sounded like Oyervidez had given up and left. Then she realized that the police had arrived, and she ended the call.

When they arrived, Rivera and Hernandez found Oyervidez outside the apartment, next to the window and its screen, which had been removed. They detained Oyervidez and then knocked on the front door of the apartment. A woman opened the door. She was crying, and her hands were shaking. She identified herself as Maria Botello (not Maria Guajardo) and provided them with her driver's license. The officers observed injuries on her wrists and arms that were consistent with having been tied up with a rope.

While Hernandez waited outside with Oyervidez, Rivera spoke with Botello. She told him that she and Oyervidez had gotten into a fight and that Oyervidez had tied her up with a rope and left the apartment. She explained that, while Oyervidez was gone, she untied herself, locked the front door, and called 911. Rivera found a jump rope in the apartment, which Botello identified as the rope Oyervidez used to tie her up. As Rivera interviewed Botello, a third officer, Sergeant J. Lancaster, arrived and began to take photographs of the apartment and Botello's injuries.

Oyervidez was arrested and charged with misdemeanor assault of Maria Botello, a person with whom he had a dating relationship or a member of his household. The State's principal evidence consisted of the recording of the 911 call

3

and the testimony of Hernandez, Rivera, and Lancaster. Though she was subpoenaed, Botello did not appear at trial.

The jury found Oyervidez guilty as charged, and the trial court sentenced him to 90 days' confinement in county jail, suspended for one year while under community supervision. Oyervidez appeals.

## Legal Sufficiency

We begin by considering Oyervidez's third issue, in which he contends that there is legally insufficient evidence to support his conviction. Specifically, Oyervidez contends that there is legally insufficient evidence that Botello and he were in a dating relationship or members of the same household at the time of the assault.

We review a challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318–20, 99 S. Ct. 2781, 2788–89 (1979). *See Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010) (plurality op.). Under that standard, evidence is insufficient when, considered in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 317–19, 99 S. Ct. at 2788–89; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider all the evidence and all

4

reasonable inferences that may be drawn from that evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We defer to the factfinder to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from "basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. We presume that the factfinder resolved any conflicts in the evidence in favor of the verdict and defer to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. If we conclude that the evidence is insufficient under this standard, we must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41, 102 S. Ct. 2211, 2218 (1982).

The only evidence that Oyervidez and Botello were in a dating relationship or members of the same household was the recording of the 911 call. In the call, the woman said that her "boyfriend" had assaulted her. She identified her boyfriend as "Jose Oyervidez" and said that she had been "with him four years already" and that they had been living together for "almost a year." The woman, however, did not identify herself as "Maria Botello." Instead, she identified herself as "Maria Guajardo." Thus, Oyervidez argues, there is legally insufficient evidence that Maria *Botello* was a person with whom he had a dating relationship or a member of his household. We disagree.

5

When the recording of the 911 call is compared with the testimony of the responding officers, it can be readily inferred that "Maria Guajardo" and "Maria Botello" are the same person. In the 911 call, "Guajardo" told the operator that her live-in boyfriend, Jose Oyervidez, had tied her up with a rope, left the apartment, and then tried to reenter the apartment (which she had locked in the interim after untying herself) through the window but stopped when the police arrived. The officers testified that they drove to the address that "Guajardo" provided the operator, found Oyervidez standing outside the apartment, noticed that the screen to the window had been removed, and then knocked on the front door, which was answered by a woman who identified herself as Botello. Botello told the officers that she had called 911 because her live-in boyfriend, Oyervidez, had tied her up with a rope and then left her alone in the apartment. She showed the officers the rope that she alleged Oyervidez used to tie her up and exhibited injuries that were consistent with her account of the incident.

From the congruence between the 911 call and the officers' testimony, any rational factfinder could have found that the 911 caller, Maria Guajardo, and the woman the officers encountered at the apartment, Maria Botello, were the same person. Because this evidence shows that Guajardo and Oyervidez were in a dating relationship and members of the same household, any rational factfinder could have found that Botello and Oyervidez were too.

6

Presuming that the jury rationally resolved the conflict between the name provided to the operator (Maria Guajardo) and the name provided to the officers (Maria Botello) in favor of the verdict, we hold that there is legally sufficient evidence that Botello and Oyervidez were in a dating relationship or members of the same household when the assault occurred. Therefore, we overrule Oyervidez's third issue.

## Admission of Out-of-Court Statements

We next consider Oyervidez's first issue, which concerns the trial court's admission of Botello's out-of-court statements through the testimony of Officer Rivera. Oyervidez contends that the admission of these statements violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. *See* U.S. CONST. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S. Ct. 1354, 1365 (2004). However, when Rivera testified at trial, Oyervidez did not object that the testimony violated the Confrontation Clause; he objected that the testimony was inadmissible hearsay. *See Mitchell v. State*, 238 S.W.3d 405, 409 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("A general hearsay objection does not preserve error on confrontation clause grounds."). Oyervidez made a pretrial motion in limine that the trial court rule on the admissibility of Botello's out-of-court statements outside the presence of the jury, citing both hearsay and confrontation clause grounds. But motions in limine do not preserve error.

7

*Castrejon v. State*, 428 S.W.3d 179, 185 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Because Oyervidez did not object on confrontation clause grounds when the statements were offered at trial, he failed to preserve error on appeal. *See Mitchell*, 238 S.W.3d at 409 (holding that defendant who failed to object on confrontation clause grounds waived error on appeal).

Oyervidez further contends that the trial court abused its discretion in overruling his hearsay objection to the admission of Botello's out-of-court statements. *See Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (trial court's ruling on hearsay objection reviewed for abuse of discretion). We disagree.

Although hearsay is generally inadmissible, *see* TEX. R. EVID. 802, there is an exception for hearsay that qualifies as an "excited utterance," which is defined as a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." TEX. R. EVID. 803(2). "In determining whether a hearsay statement is admissible as an excited utterance, the court may consider the time elapsed and whether the statement was in response to a question." *Zuliani*, 97 S.W.3d at 595. However, the "critical determination is 'whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event' or condition at the time of the statement." *Id.* at 596 (quoting *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)).

8

The responding officers' testimony shows that Botello was "still dominated by the emotions, excitement, fear, or pain" of the assault when she made her statements to Rivera. *Id.* Rivera testified that when he and Hernandez arrived at the apartment, Botello was "crying" and "her hands were shaking." He said that Botello was so upset that it took her five or ten minutes to even start talking to him. Hernandez likewise testified that Botello was "afraid" and "physically shaking." And Lancaster testified that, while Rivera interviewed Botello, he noticed that her voice was "extremely nervous" and "emotional." He "could tell she was distraught." The officers' testimony is supported by the recording the 911 call, which was made shortly before the officers arrived and shows Botello in a distraught, frantic state.

We hold that Botello's out-of-court statements were admissible under the excited utterance exception to the hearsay rule. *See Campos v. State*, 186 S.W.3d 93, 99–100 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding that complainant's statements to police officers, made 43 minutes after robbery, were admissible under excited utterance exception when statements were made in response to questioning and officers testified that complainant was crying, upset, and frightened). Accordingly, we overrule Oyervidez's first issue.

## Jury Argument

Finally, we consider Oyervidez's second issue, in which he argues that the trial court abused its discretion in denying his motion for mistrial because the prosecutor made improper and incurable comments during closing argument.

We review the trial court's denial of a defendant's motion for mistrial for an abuse of discretion. *Williams v. State*, 417 S.W.3d 162, 172, 175 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). In determining whether the trial court abused its discretion in denying a motion for mistrial, we balance three factors: (1) the severity of the misconduct, (2) the curative measures taken by the trial court, and (3) the certainty of conviction absent the conduct. *Williams*, 417 S.W.3d at 176. In most instances, an instruction to disregard the remarks will cure the error. *Id.* at 175.

At the beginning of the State's closing argument, the prosecutor speculated that Botello did not appear and testify at trial because she was afraid of Oyervidez:

> Again, I want to turn your attention back to what we discussed on voir dire. You yourselves gave examples, reasons why a victim of domestic violence may not want to come in and testify. One of those reasons, you or some of your panel members said, was out of fear. And, you know what, this is the reason right here why Miss Botello is not here. She's fearful of the defendant Mr. Jose Oyervidez.

10

Oyervidez objected that the prosecutor was "giving the jury a false impression." The trial court sustained the objection and instructed the jury to disregard the prosecutor's comments:

> Members of the jury, the only evidence you could consider during trial is what you hear from the witness stand. What these lawyers say during argument is not to be considered as any evidence. You may proceed.

Oyervidez then moved for mistrial, which the trial court denied.

Oyervidez argues that the trial court's denial of his motion for mistrial was an abuse of discretion. We disagree.

The prosecutor's comments were isolated. The trial court instructed the jury to disregard the comments, and "we generally presume the jury follows the trial court's instructions in the manner presented." *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). And the certainty of conviction absent the comment was high, as there was compelling evidence of Oyervidez's guilt, including the 911 call, the largely uncontested testimony of the responding officers, and the photos depicting Botello's injuries.

Assuming that the prosecutor's comments were improper, they were not so extreme under the circumstances as to render ineffective an instruction to disregard. *See Moore v. State*, 999 S.W.2d 385, 405–06 (Tex. Crim. App. 1999) (concluding that instruction to disregard cured harm from comment on defendant's failure to testify), *cert. denied*, 530 U.S. 1216, 120 S. Ct. 2220 (2000). We hold

11

that the trial court did not abuse its discretion in denying Oyervidez's motion for mistrial. Therefore, we overrule his second issue.

## Conclusion

We affirm the trial court's judgment.



Harvey Brown
Justice

Panel consists of Justices Jennings, Bland, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).