

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-17-00136-CR

ANDREW LEWIS TROWBRIDGE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 427th District Court
Travis County, Texas
Trial Court No. D-1-DC-16-100218, Honorable Tamara Needles, Presiding

September 11, 2018

MEMORANDUM OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

Appellant Andrew Lewis Trowbridge appeals from his conviction by jury of the felony offense of family violence assault,[1] and the resulting court-imposed sentence of nine years of imprisonment. On appeal, appellant challenges the sufficiency of the evidence supporting his conviction. We will affirm.

---

[1] TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(A) (West 2018).

## Background

Appellant was indicted for "intentionally, knowingly or recklessly caus[ing] bodily injury to Esmeralda Jimenez, a member of ANDREW LEWIS TROWBRIDGE's family or household and with whom ANDREW LEWIS TROWBRIDGE had a dating relationship by grabbing Esmeralda Jimenez with his hand and by pushing Esmeralda Jimenez with his hand and by pulling Esmeralda Jimenez with his hand and by throwing Esmeralda Jimenez with his hand and by striking Esmeralda Jimenez with his hand and by kicking Esmeralda Jimenez with his foot." The indictment also included appellant's previous final assault convictions.

Although appellant apparently was not living with his girlfriend Esmeralda Jimenez at the time of the July 2016 assault, the two had lived together for nearly three years.[2] On the afternoon of the assault, Jimenez called 911 and told the dispatcher appellant assaulted her. At trial, she testified she did not remember what happened that led her to call 911 and testified she told responding officers that she did not remember "anything." During cross-examination, Jimenez denied that appellant assaulted her and denied that he caused any of her injuries. She agreed with the prosecutor that she "love[s]" appellant and did "not want him to be convicted . . . ."

The 911 operator, Bill Evans, testified and told the jury that during her mid-afternoon call, Jimenez sounded "absolutely terrified." He stated he heard her "crying" and "breathing very heavily." The recording of the 911 call was admitted into evidence.

---

[2] Appellant does not challenge the evidence that Jimenez was a member of his family or household or that they were in a dating relationship.

The jury heard the recording in which Jimenez described the attack, stating appellant came to her home, argued with her, and "hit [her] behind [her] head." She identified appellant by name, spelled it for the dispatcher, and provided his date of birth along with other information. She also said appellant has "done it more than once . . . ."

Deputy Stephen Shockey responded to Jimenez's 911 call. He told the jury that when he arrived, Jimenez was "crying," "visibly shaking," "rubbing various parts of her body complaining of pain." Shockey testified Jimenez identified the person who assaulted her as "Andrew Trowbridge" and gave the deputy appellant's date of birth, phone number, and address. Shockey described Jimenez's statement in which she said appellant: entered her home, forcibly grabbed her left bicep and threw her down on the couch; followed her to the bedroom, shut the door, grabbed her by the hair and threw her down; kicked her in the back of the head; and punched her on the chin. Shockey said Jimenez told him she yelled for her cousin who was sleeping elsewhere in the home.[3]

Shockey also testified he observed Jimenez had "significant bruising on her left bicep. It was consistent with somebody grabbing ahold of you . . . ." She also had "some bruising" on her right arm, and a quarter-sized abrasion on her right forearm. The left side of her face appeared red and swollen, she had scratches above her right breast and a knot and some swelling on the back of her skull. Shockey told the jury the injuries he saw were consistent with the version of events Jimenez related that day. Photographs of the injuries were admitted. Jimenez testified she did not recall how she received the

_____

[3] Neither appellant nor Jimenez's cousin testified at trial. The evidence the cousin was asleep in the home at the time of the assault came through Shockey's testimony. He told the jury the cousin "did not see anything. He was sleeping." The cousin had "[n]o involvement whatsoever."

injuries but maintained appellant did not cause them. She said some were caused by her shirt being too tight, others were caused by her patients at work and still others were caused by her "injections." She also said other witnesses were being untruthful if they said she told them appellant assaulted her causing injury.

Anthony Switzer, a social worker in the sheriff's victim services unit, testified he met with Jimenez at the scene that day. She told him she had a knot on her head and was in pain, and that the injury was caused when her "ex-boyfriend" kicked her. A triage nurse, Sandra Pfeifer, also testified that Jimenez told her that her "ex-partner grabbed her by the left arm and threw her against the couch, then grabbed her by the hair and pushed her to the ground, kicked her in the head." The nurse also said Jimenez told her appellant "attempted to choke her but she scratched him on the face." Since the assault, Jimenez said, she has had a continuous headache. The nurse also identified other injuries on Jimenez that were consistent with Shockey's description. A physician, Dr. Andrea Martin, testified to what Jimenez told her the day she examined her. The physician's version of events was also consistent with Shockey's description.

An expert witness, a victim-services counselor, testified that in her experience, "75 percent, 80 percent" of domestic violence victims recant their earlier statements.

Analysis

Through one issue, appellant contends the evidence presented at trial was insufficient to support his conviction because the only witness, Jimenez, testified she did not recall the events leading to the assault and told the jury appellant did not assault her on the charged date. The State contends the evidence presented by the other testifying

4

witnesses was sufficient to prove appellant committed the assault as charged in the indictment. We agree with the State's contention.

Standard of Review

We review the sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979); *Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The appellate court's role is that of a "due process safeguard ensuring only the rationality of the factfinder." *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the factfinder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

The factfinder is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("The factfinder exclusively determines the weight and credibility of the evidence."). We defer to the factfinder's determinations of credibility, and may not substitute our judgment for that of the factfinder. *Jackson*, 443 U.S. at 319; *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014). When there is conflicting evidence, we must presume the factfinder resolved the conflict in favor of the verdict, and

defer to that resolution. *Jackson*, 443 U.S. at 326; *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016).

Application

The elements of assault on a family member are (1) intentionally, knowingly, or recklessly (2) causing bodily injury (3) to another person (4) who is a member of the defendant's family or a person with whom the defendant has a "dating relationship." TEX. PENAL CODE ANN. § 22.01(a) (West 2018). Under the Penal Code, the offense is enhanced from a Class A misdemeanor to a third-degree felony if the assault is against a family member or involves "dating violence" and the defendant has a prior conviction for assault on a family member. TEX. PENAL CODE ANN. § 22.01(b)(2)(A). To determine whether the State has met its evidentiary burden of proving a defendant guilty beyond a reasonable doubt, we compare the elements of the offense as defined by the hypothetically correct jury charge to the evidence adduced at trial*. Riordan v. State*, No. 03-16-00297-CR, 2017 Tex. App. LEXIS 7388, at *9 (Tex. App.—Austin Aug. 4, 2017, no pet.) (mem. op., not designated for publication) (citations omitted).

As noted, appellant does not challenge the evidence supporting his relationship with Jimenez nor does he directly challenge the evidence supporting the other elements. Rather, appellant argues Jimenez was the only witness to the alleged assault and because she told the jury she did not remember what happened and that appellant did not cause her injuries, the evidence must be insufficient to support his conviction.

He argues also the evidence is insufficient because the evidence did not show how an assault like that described by the State's witnesses failed to wake the cousin sleeping

in the house. He asserts such an assault would have been loud enough to wake the cousin. Because the cousin did not wake, appellant argues, the assault must not have occurred in the manner described by the State's witnesses and the evidence was therefore insufficient.

We cannot agree with appellant's position. As noted, several witnesses testified to the statements made by Jimenez describing the assault, the identity of her assailant, and her injuries. Those witnesses also testified to their own observations of Jimenez. A recording of the 911 call, photographs of Jimenez's injuries, and medical records were before the jury. If accepted by the factfinder, the testimony was sufficient to establish that appellant came to Jimenez's home and hit her, kicked her, and threw her to the floor, causing injuries and pain. Hearsay evidence has probative value and can be sufficient to support a conviction. *Hernandez v. State,* No. 01-15-00492-CR, 2016 Tex. App. LEXIS 11049, at *6 (Tex. App.—Houston [1st Dist.] Oct. 11, 2016, pet. ref'd) (mem. op., not designated for publication*) (citing *Poindexter v. State,* 153 S.W.3d 402, 409 (Tex. Crim. App. 2005); *see also Fernandez v. State*, 805 S.W.2d 451, 456 (Tex. Crim. App. 1991) (hearsay evidence legally sufficient to support conviction despite fact that declarant testified and recanted out-of-court statement).

Although Jimenez testified appellant did not assault her, and that her injuries were caused by events unrelated to appellant, the State's case was not dependent on Jimenez's testimony and her recantation did not diminish the sufficiency of the evidence provided by other witnesses, photographs, and medical records presented at trial. *See Walker v. State,* No. 02-16-00139-CR, 2017 Tex. App. LEXIS 10813, at *24 (Tex. App.—Fort Worth Nov. 16, 2017, no pet.) (mem. op., not designated for publication) (it is within

the factfinder's purview to weigh recantations in the consideration of a victim's overall credibility and such conflicts in the evidence alone are not enough to render the evidence insufficient); *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("a criminal conviction, which requires proof beyond a reasonable doubt, may rest on hearsay despite the lack of the complainant's testimony or even the complainant's recantation"). Accordingly, the jury could have believed the testimony of the 911 dispatcher, the deputy, the social worker, the nurse, and the physician and disbelieved Jimenez when she testified at trial. *Gaeta v. State*, No. 05-14-01202-CR, 2016 Tex. App. LEXIS 7422, at *20 (Tex. App.—Dallas July 12, 2016, no pet.) (mem. op., not designated for publication)*. See also Saldana v. State,* 287 S.W.3d 43, 60 (Tex. App.—Corpus Christi 2008, pet. ref'd) ("it is up to the fact finder to determine whether to believe the original statement or the recantation[;]" "a factfinder is fully entitled to disbelieve a witness's recantation") (citing *Chambers,* 805 S.W.2d at 461).

Further, despite appellant's assertion to the contrary, the State had no burden to prove the assault was loud enough to wake Jimenez's sleeping cousin. It was the jury's task to assign weight to that evidence, along with the other evidence it received. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The State was required only to prove the elements of the offense. *See Riordan,* 2017 Tex. App. LEXIS 7388, at *8 (citing *Jackson,* 443 U.S. at 313, *Rabb v. State,* 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged."). It did so through several witnesses.

Viewed in the light most favorable to the verdict, the evidence permitted any rational trier of fact to conclude beyond a reasonable doubt that appellant had a dating

relationship with Jimenez and that he assaulted her in a manner described in the indictment. Accordingly, the evidence was sufficient to support appellant's conviction. We resolve his issue against him.

Conclusion

Having resolved appellant's issue on appeal against him, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.